In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1749

DARYL L. JOHNSON,

*Plaintiff-Appellant*,

*v.*

CAMBRIDGE INDUSTRIES, INCORPORATED
and MERIDIAN AUTOMOTIVE SYSTEMS,
INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP00-1540-C-B/S—**Sarah Evans Barker**, *Judge.*

ARGUED SEPTEMBER 19, 2002—DECIDED APRIL 9, 2003

Before CUDAHY, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Not every genuine difficulty on the job amounts to impermissible discrimination in violation of federal statutes. Instead, distinctions like the difference between an "adverse employment action" and lesser problems, or between an employee's actual performance and the employer's perception of that performance, abound. When Daryl Johnson sued his current employer, Meridian Automotive Systems, Inc., as well as its predecessor Cambridge Industries, Inc., alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq*., the district court was required as a matter of law to observe these subtle distinctions when it ruled on Meridian's motion for summary judgment. The district court was also entitled to rely on the materials each party cited as a basis for its decision. We conclude that the court correctly determined that Johnson did not produce enough evidence to warrant a trial, although some of our reasons for reaching this decision are different from the district court's. We therefore affirm the judgment of the district court.

**I**

Since 1996, Johnson, an African-American male, has worked as a production associate building fiberglass automotive replacement parts for Cambridge Industries, now owned by Meridian. Johnson has been an outstanding employee with an excellent history of performance evaluations and a company-wide reputation for high quality work. This generally favorable assessment of Johnson is tarnished only by a single write-up, which was mistakenly given to Johnson on two separate occasions. The write-up documents various employment-related problems on Johnson's part over an eight-month period.

When Cambridge advertised an opening for two team leaders in May 1999, Johnson and white co-worker Josh Goad applied for and were elected to these positions by their colleagues. That positive event was clouded, however, by two separate racist remarks made by co-workers Ross Springman and Brian Durham that came to Johnson's attention more or less contemporaneously. Specifically, when Springman was asked why he was not going to run for the team leader position, he proclaimed that there was no need to compete for that job since it was a foregone conclusion who would receive the position. Pressed by a co-worker to explain his comment, Springman apparently

said, "Eenie, meenie, minie, moe, pick a nigger by his toe," in reference to the fact that Johnson was a candidate for the position. (In any event, Goad reported that he overheard Springman's comment to this effect.) In an unrelated incident, Durham told co-worker Travis Irvine that he did not know why Irvine would "want that one-eyed nigger over here." The comment could only have referred to Johnson, who lost the sight in one of his eyes as a child. Neither Springman nor Durham was a supervisor of Johnson, and both received some form of management censure. Springman was suspended for three days (and served at least one day of his suspension), and Durham's employment was terminated, although the record does not establish whether or not he left Cambridge voluntarily, and whether his departure was in response to his racist remark.

Shortly after Johnson and Goad complained to management about these racist remarks, the company announced that it was rescinding altogether the positions of team leader to which the two had been elected. When asked by Johnson to explain, Acting Plant Manager Ron Szydlowski told him, "[I]t came down from corporate that there will be no other team leader positions, just the ones that are already appointed previously." Johnson asserted in his deposition and affidavit that in the fall of 1999, Goad was put in a team leader position, but Johnson was not. He did not call any other evidence of such a promotion to the district court's attention, however, which led to problems we discuss below.

Other facts pertinent to Johnson's appeal relate to both his race discrimination and retaliation charges. For example, on October 15, 1999, Johnson injured his back on the job and went to a local hospital emergency room for treatment. The doctor prescribed painkillers and recommended a lumbar back support brace for him. Nonetheless, upon his return to work a few days later, he

was assigned to work that aggravated his injury. The company would not permit him to work while taking certain prescription medications. Worse, despite the promises from company officials that he would receive the back brace through a company program, he did not get the brace until he produced a doctor's prescription and told the company his waist size. Johnson believed that this treatment was in retaliation for his complaints about racial discrimination in the workplace. Likewise, Johnson asserts that he was assigned harder tasks than his white co-workers and was left to perform these tasks alone, which, because of the racial lines these assignments reflected, also evidenced a discriminatory workplace. Finally, Johnson offers evidence of various encounters with Cambridge's management as proof that he was the victim of discrimination and impermissibly retaliated against for engaging in protected conduct. These encounters include (among other things) being told by a supervisor to wear safety goggles; receiving a warning about alleged violations of Cambridge's vacation policy; receiving a written notification of nine instances of unsatisfactory job performances that spanned a period of eight months; and being threatened with termination for insubordination.

Johnson filed his first charge with the Equal Employment Opportunity Commission (EEOC) on October 18, 1999. A week later he filed a second charge with the EEOC alleging that Cambridge retaliated against him for filing the first charge. Curiously, neither complaint alleges that Johnson was denied the promotion to team leader for impermissible or discriminatory reasons. The EEOC issued right-to-sue letters in both cases, and Johnson subsequently filed this lawsuit against both Meridian and Cambridge on October 4, 2000. (Johnson's claims against Cambridge are stayed because Cambridge in the meantime has filed for bankruptcy, and thus it is protected by the automatic stay. This does not affect our substantive analysis, however, and

procedurally the case is properly here because the district court entered a judgment pursuant to FED. R. CIV. P. 54(b) with respect to Meridian. Because all of the conduct at issue occurred while Johnson was employed by Cambridge, we sometimes refer to both defendants as Cambridge.)

## II

Our review of the district court's decision to grant summary judgment for Meridian is *de novo. Gordon v. United Airlines*, 246 F.3d 878, 885 (7th Cir. 2001). In deciding the appeal, we draw our own conclusions of law and fact from the record and will uphold summary judgment in Meridian's favor only if there is no genuine issue of material fact and Meridian is entitled to judgment as a matter of law. *Id*. See also FED. R. CIV. P. 56(c).

It is now well established that a plaintiff may show that she was the victim of discrimination or impermissible retaliation in the workplace either by providing direct evidence of discrimination or by proceeding under the indirect, burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1397 (7th Cir. 1997). In spite of the alleged racist comments from certain coworkers, Johnson lacks direct evidence of race discrimination or retaliation and thus is proceeding under the *McDonnell Douglas* burden-shifting method.

The *McDonnell Douglas* approach requires a plaintiff first to establish certain *prima facie* elements for either race discrimination or retaliation. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once this is done, through competent evidence, the burden of production shifts to the defendant to offer a permissible, noninvidious reason for the alleged discrimination. *Id*. If the defendant meets this production burden, the plain-

tiff may then rebut that evidence by showing that the employer's reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143; see also *Gordon*, 246 F.3d at 886. " 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 143 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### A.  Failure to Promote Claims

As the district court noted, Johnson's complaint that he was denied the team leader promotion can be read to state a claim of either race discrimination or retaliation. Therefore we analyze it under both theories. To establish a *prima facie* case for race discrimination, Johnson must show that he belongs to a protected class, that he was performing his job at Cambridge to his employer's satisfaction, that he suffered an adverse employment action, and that a similarly-situated employee who was not a member of a protected class was treated more favorably by Cambridge. *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir. 1999). The *prima facie* case for a retaliation claim requires the plaintiff to show "that (1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). See also *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). *Stone* clarifies that to establish a *prima facie* case of retaliation, an employee need not present proof of a " 'causal link' between the protected expression in which the plaintiff engaged (as by filing a complaint about an unlawful

act by his employer) and the adverse employment action of which he is complaining." *Stone*, 281 F.3d at 642; *Haywood v. Lucent Techs. Inc.*, No. 01-4092, 2003 WL 1400496, *5 (7th Cir. Mar. 20, 2003).

Before examining Johnson's failure-to-promote claim, we must clarify whether we are talking about events limited to the May 1999 abolition of the team leader position, or whether there is evidence in this record that supports the claim Johnson now emphasizes, which is that the company's promotion decisions must be assessed under the broader time frame that includes Goad's alleged fall 1999 promotion. Meridian argues first that Johnson waived this point by admitting in his deposition that the only denial of an employment opportunity he was complaining about was the loss of the team leader position in May 1999. D. Johnson Deposition at 147. We do not find the comment, which has no reference to the date on the page to which Meridian refers us, to be so clear. The more important question, however, is whether Johnson met his burden of directing the district court's attention to admissible evidence that Goad was later promoted.

Johnson's own deposition and affidavit make it quite clear that he sees this as a case where both men applied for the team leader position, that both temporarily lost it because of their complaints about discrimination, but that later on only Goad received the promotion. (Johnson speculates this happened because his was the louder voice in the earlier complaints.) In addition, Johnson now asserts, Meridian admitted in a filing to the court that Goad was indeed subsequently given the team leader job, and that this amounted to a promotion. In Meridian's reply to Johnson's Statement of Additional Material Facts pursuant to Local Rule 56.1, ¶ 102, the company responded to Johnson's statement that "In the Fall of 1999, Josh Goad was given the job of Team Leader but Daryl Johnson was not" as follows: "Solely for the purpose of this motion, Meridian will assume this fact exists without

controversy." When pressed at oral argument before this court to explain why the company answered this question as it did rather than with a denial, the best that counsel for Meridian could do was to suggest that the company's reply had been an inadvertent mistake. (There is some plausibility to this claim, given the fact that the statement occurs in the very same document that had Meridian's replies to Johnson's responses to its own Statement of Material Facts, and in those replies it unequivocally stated that Goad "was not made a team leader at any time between May 1999 and the date of his resignation." Reply to ¶ 33. We do not rely on any such inadvertence to excuse the company's willingness to assume this fact for purposes of the summary judgment motion, however, given the rule that facts are to be taken in the light most favorable to the non-moving party at summary judgment.)

If Johnson had made any use of that statement in his filings with the district court in response to the summary judgment motion, this would be a different case. But he did not. Instead, he supported his assertion that Goad received the later promotion only with a reference to his own deposition and to his own affidavit. He did not indicate why or how he had personal knowledge about Goad's employment status with the company. In fact, Meridian specifically directed the court's attention to the affidavit of Keith Kniepkamp, who was the Corporate Director of Human Resources for Meridian. Kniepkamp stated that Goad was a production associate until he quit his employment at Cambridge during the summer of 2000, and that Goad was never promoted to team leader during the time of his employment at Cambridge. Thus, the district court had before it Johnson's unsupported assertion that Goad received the promotion while he was still with the company, in the fall of 1999, and the Human Resources Director's affidavit to the contrary.

While it may seem unfair to hold Johnson to the evidence he cited to the district court, it is not. Discovery is notorious for producing far more material than the parties will ultimately use. We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them. See, *e.g.*, *Greer v. Board of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)). The rules of each district court structuring the summary-judgment process cannot serve their function if parties can later go to the court of appeals and secure a reversal based on evidence the district judge may not have known was present. In our view, that is what we would be doing if we now relied on the qualified admission in ¶ 102 of Meridian's statement.

This means that the question before us is whether the evidence Johnson properly presented to the district court can support either his race discrimination claim or his retaliation claim. We turn first to an element of the *prima facie* case that is necessary for both: whether Johnson can point to a similarly situated co-worker who was treated more favorably either because she was not a member of a protected class or because she did not engage in protected conduct. The district court concluded that the answer was no, noting that both Johnson (a member of a protected class) and Goad (a white employee who is not a member of a protected class) were elected to the team leader position, then complained of racist remarks in the workplace, and finally were denied their elected positions. This, the judge concluded, was fatal to both theories Johnson was pursuing.

The court gave only brief consideration to Johnson's broader claim. In a footnote, it commented that "Mr. Johnson believes (without supplying any evidence of the fact)

that Mr. Goad was promoted to team leader at some point in May 1999. We find Cambridge's evidence that Mr. Goad was *never* promoted to team leader conclusive against Mr. Johnson's mere belief." As far as Johnson's presentations before the district court were concerned, this observation was correct. It is immaterial that there might have been other evidence in the record—the ¶ 102 statement, specifically (which incidentally did not take the form of an admission under Rule 36 of the Federal Rules of Civil Procedure, but was only evidentiary in nature)— that would have changed matters. Johnson did not call ¶ 102 to the court's attention. This means that neither the court nor Meridian was alerted to its possible significance. From Meridian's standpoint, it also means that Meridian had no opportunity to make any appropriate motions that might have clarified the matter then and there. Without competent evidence of Goad's later promotion, Johnson's case on both the race discrimination and the retaliation theories collapses.

If, however, one were to give Johnson every benefit of the doubt and assume that the district court should have considered the case on the assumption that Meridian had accepted for purposes of the motion the fact that Goad was later promoted (which, to repeat, is not our view), we would turn to the remaining aspects of Johnson's *prima facie* race discrimination case. Meridian is not, for present purposes, disputing that Johnson is a member of a protected class or that he performed his job to Cambridge's satisfaction. The remaining issue that is relevant for the *prima facie* case is whether Johnson can show that he suffered an adverse employment action. The district court resolved in Johnson's favor the question whether the team leader position constitutes a promotion after crediting Johnson's testimony that the position is accompanied by slightly higher pay. Counsel for Meridian reluctantly conceded this point at oral argument; therefore, we

too find that the team leader position constitutes a promotion and that if Johnson was denied this position he suffered an adverse employment action. See, *e.g.*, *Hilt-Dyson*, 282 F.3d at 465-66 (materially adverse employment action may be demonstrated by a pay decrease).

Meridian had tried to avoid the implications of its concession that team leaders receive a salary increase by drawing our attention to the fact that there is no evidence that Goad received a pay increase after he was allegedly promoted. After oral argument it called to our attention recent decisions of the Courts of Appeals for the District of Columbia and Sixth Circuit, which held that adverse employment actions within the meaning of Title VII cannot be established by showing job reassignments that carry the loss of prestige, see *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002), or involve more physically demanding work, see *White v. Burlington N. & Santa Fe Ry. Co.*, 310 F.3d 443, 450 (6th Cir. 2002). But those cases are unhelpful for our purposes, precisely because (unlike the defendants in *Forkkio* and *White)* Meridian concedes that the team leader position is a higher paying position, and thus a promotion. At this stage it is enough that there is some evidence indicating that team leader positions come with a pay increase. That means that the denial of an opportunity to move to the position, unlike the mere denial of a lateral transfer, constitutes a materially adverse employment action. *Hilt-Dyson*, 282 F.3d at 465-66. Accordingly, if the evidence about Goad's alleged later promotion were properly in the case, we would find that Johnson has established his *prima facie* case.

At this point, the burden of production would shift to Meridian to supply a non-discriminatory, non-invidious reason for promoting Goad instead of Johnson. *Reeves*, 530 U.S. at 143. Once again, Johnson's biggest problem is with the way he presented the case at the district court.

By failing to show the court that he had evidence of Goad's ultimate promotion, he lost the opportunity to broaden the court's inquiry beyond the events of May 1999. And as to the May events, the company was ready with a legitimate, nondiscriminatory reason for its actions. As Johnson himself testified in his deposition, then-Acting Plant Manager Ron Szydlowski told him that "[I]t came down from corporate that there will be no other team leader positions, just the ones that are already appointed previously." In short, the company claimed that its decision was a general structural one, made at higher corporate levels, not one personal to the affected individuals. Both because it believed that Johnson's claim was limited to the events of May 1999, and because it believed that any later promotion was not in the case, the company did not explicitly address any reason justifying Goad's later promotion. (Indeed, had this been squarely in front of the court, it is overwhelmingly likely that Meridian would have reiterated its evidence that no such promotion occurred.)

With an admissible, non-discriminatory reason for the decision not to promote either Johnson or Goad in May 1999 on the table, the burden shifted back to Johnson to present legally sufficient evidence that would support an inference that Cambridge really was acting out of an invidious purpose. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993); *Jones v. Union Pacific R.R. Co.*, 302 F.3d 735, 742 (7th Cir. 2002). We agree with the district court that because the initial decision not to promote Johnson and Goad to team leader was made at the corporate rather than facility level, there was simply no evidence showing that Meridian's explanation was pretextual. Nothing at that stage shows race discrimination, given the equal treatment of the two men. (This is an alternative ground for agreeing with the district court's decision with respect to the May 1999 promotion as an

isolated event.) Similarly, and alternatively to our earlier discussion of the retaliation claims, there was no indication that the corporate actors who made this decision were aware of Johnson's complaints of race discrimination. See *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 754-55 (7th Cir. 2000) (discriminatory intent must influence ultimate decisionmaker).

If the broader claim were properly in the case, it is possible that Johnson might have created a jury issue on it. The problem, once again, is that the procedural failure to call the ¶ 102 statement to the court's attention affected the way the case was developed. A number of questions exist, which might have been answered through the discovery materials available to both parties. Most critically, Johnson would have had to come forward with more than his own speculation that Goad really did receive the position. Beyond that, it would be important to know whether or not Johnson knew about the second team leader opening in the fall; if he did, whether he applied for it or otherwise made his continuing interest known. From Meridian's side, one would like to know what did happen to Goad in the interim that might have caused the confusion about his alleged promotion. If it did designate Goad as a team leader, how and why did that happen? Finally, we would need contemporaneous evidence about Johnson's performance at the later time, given the fact that discrimination must be assessed at the time a company acts. Just because a person is an excellent employee at one point does not assure that he or she is the right person for a promotion at another point months later. But, because the crucial statement in ¶ 102 was not brought to the district court's attention, none of this was developed. On the record as it stands, we must conclude that Johnson has failed to show that Meridian's reasons for acting as it did were pretextual.

**B. Miscellaneous Claims of Race Discrimination**

In addition to his claims stemming from the passed-over promotion, Johnson also complains that he was singled out for unfavorable treatment by Cambridge because of his race. This charge is backed up with allegations that Johnson was given harder tasks at work and made to perform them alone (tasks that white co-workers always undertook as a group), and that he was told to wear safety goggles even though white co-workers were not given the same admonition.

We need not belabor Johnson's race discrimination claims beyond briefly noting why he cannot make out his *prima facie* case. Simply put, nothing about which Johnson is complaining amounts to an adverse employment action. The definition of an adverse employment action is generous, but it is still subject to certain limitations. See *Herrnreiter v. Chicago Housing Auth.,* 315 F.3d 742, 744 (7th Cir. 2002); *Haugerud v. Amery School Dist.* 259 F.3d 678, 691 (7th Cir. 2001). At the very least, Johnson must show some quantitative or qualitative change in the terms or conditions of his employment that is more than a mere subjective preference. *Herrnreiter,* 315 F.3d at 744-45. Being made to wear safety goggles does not meet this standard. Nor does Johnson's allegation that he was given harder work assignments, under the circumstances he describes.

In his deposition testimony, Johnson boasted about his superior capabilities as an explanation for why he got harder work assignments. Meridian pointed to this statement as a legitimate, non-discriminatory reason for its actions: it gives more demanding jobs to better employees, regardless of race. This non-race-based explanation puts the burden back on Johnson to prove that Meridian treated him differently because of his race. As we have said before, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has

that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999). Johnson offers no additional evidence from which it may be inferred that he was made to perform harder jobs because of his race and not his capabilities. Therefore summary judgment in Meridian's favor was proper.

## C.  Second Retaliation Claim

Finally, we turn to Johnson's claim that Cambridge retaliated against him a second time following his complaints to the EEOC. The alleged retaliatory acts included the company's refusal to provide him a back brace following the back injury that he sustained while working; the decision not to allow him to work while taking prescription medications for that injury; and the Formal Notifications of Unsatisfactory Conduct that Johnson received.

The district court resolved this second retaliation argument against Johnson, finding that he failed to make out the *prima facie* case for retaliation both because none of the alleged retaliatory acts (alone or together) constituted an adverse employment action, and because there was no evidence of a causal link between the protected conduct and the retaliatory act. As we have already explained, the law of this Circuit no longer requires a causal link to make out a *prima facie* case for impermissible retaliation. *Stone*, 281 F.3d at 642. But even with that hurdle cleared, Johnson still cannot make out his *prima facie* case unless he can show that the denial of the back brace, refusal to allow him to work while on pain medications, or the write-up constituted adverse employment actions.

As we noted above, the range of employer conduct that constitutes an adverse employment action is broad, but

not unlimited. *Haugerud*, 259 F.3d at 691. In *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993), the court gave a list of materially adverse actions that an employer might take, including, of course, termination of employment, "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," *etc*. These actions are all similar to the extent that they effect a quantitative or qualitative change in the terms or conditions of employment. *Haugerud*, 259 F.3d at 691. In the retaliation context, we have explained that the adverse action or harm that an employee suffers will not always be employment-related. See *Herrnreiter*, 315 F.3d at 745-46 (citing *McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996)). Nonetheless, the employee must complain of some action on the employer's part that causes her to suffer a real harm. *Cf. Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 731 (7th Cir. 2002) ("Every tort, whether it be one derived from common law or a statutory tort like Title VII, requires a showing of harm.").

Even under the more generous standard that governs retaliation claims, we do not believe that Johnson has suffered the necessary harm. The denial of a back brace and the enforcement of a pre-existing rule that employees may not work while taking certain prescription medications are not the type of employer actions that our cases label materially adverse. Cambridge's decision to put a laundry list of complaints aired about Johnson's work into writing looks more troublesome, but it cannot support this claim either. Our law is clear that without more, a performance evaluation of this type does not amount to an adverse employment action. See *Haywood*, 2003 WL 1400496 at *6; *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729-30 (7th Cir. 2001) ("Unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse

employment actions."); *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (same). Johnson merely alleges that he received the written notification. He made no effort to show how it affected his employment from that time forward. The district court was therefore correct to reject this claim as well.

## III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
