**John W. DILLARD, Plaintiff–Appellant,**

v.

**CHICAGO TRANSIT AUTHORITY, Defendant–Appellee.**

No. 03–3538.

United States Court of Appeals, Seventh Circuit.

Argued July 6, 2004.

Decided July 14, 2004.

L. Steven Platt, Arnold & Kadjan, Chicago, IL, for Plaintiff–Appellant.

Michelle L. Patail, Chicago Transit Authority Law Department, Chicago, IL, for Defendant–Appellee.

Before POSNER, EASTERBROOK, and KANNE, Circuit Judges.

## ORDER

John Dillard, an African–American male, filed this Title VII suit against his employer, the Chicago Transit Authority, alleging that the CTA discriminated against him on the basis of his race when it failed to promote him on several occasions. He also alleged that the CTA retaliated against him for complaining about discrimination. The district court granted summary judgment to the CTA, concluding that Dillard could not demonstrate that he was more qualified than those promoted or that he was treated less favorably than those who did not complain of race discrimination. Dillard appeals, and we affirm.

Dillard has been an employee of the CTA since 1990. He has a bachelor's degree in electrical engineering and came to the CTA with over twenty years of experience working both as an engineer and a salesperson. Dillard's performance at the CTA has generally been satisfactory, and he has received a number of promotions and salary increases. However, Dillard states that as his employment has continued, he has seen a "pattern developing" of white males being promoted to positions for which he felt qualified "with no consideration" given to him as a candidate. Dillard filed a charge of discrimination with the EEOC in June 2000.

As evidence of discrimination, Dillard points to an incident in November 1999, when he was denied the position of General Manager of Quality Assurance in favor of a white male. Dillard believed that, as the second or third oldest manager in the division, he was qualified for the position. The CTA vice president who made the hiring decision, however, stated that he preferred the white applicant because of that applicant's experience with bus operations and major capital projects. Dillard was also passed over for the position of Lead Manager of Receiving and Management. Dillard was granted an interview for this position, but he declined it because he was only given one day's notice of the interview, and he believed that this lack of preparation time put him at a disadvantage. He subsequently declined an invitation to interview with more advance notice because he believed he would encounter a "hostile environment." Because he did not interview for the position, the CTA did not consider him a candidate.

Apart from these alleged instances of race discrimination, Dillard also believes that his decision to sue the CTA led to retaliation. For instance, in June 2000 he unsuccessfully applied for the position of General Manager of Engineering and Technical Services. The decisionmaker selected a white male candidate, purportedly because that candidate had "experience and education in maintenance audits and hands-on automotive engineering problems." Similarly, Dillard was passed over for the position of Manager of Administrative Services, for the stated reason that a white female candidate had more property management experience than he. Finally, Dillard also lost his bid to become the General Manager of Specification Engineering and Inspection. Although Dillard admits that he only submitted a resume to his supervisor and did not submit an application to the personnel department as required by the job posting, he believes that retaliation played a role in the decision.

As an additional example of retaliation, Dillard also states that he was subjected to unpleasant work conditions. In May 2000 the CTA informed Dillard that his division would be transferred to a space known as the "901 facility." Dillard's new office did

not have carpeting, window blinds, or a telephone line that allowed outside callers to reach him directly. Nor did Dillard have keys to this office, although the CTA points out that Dillard's supervisors also lacked keys and carpeting. Dillard also complained that his "pass key" initially did not allow him access to some areas of the facility, but his supervisor apparently remedied that problem as soon as Dillard made him aware of it.

Finally, Dillard also claimed that retaliation manifested itself in his behavior being more carefully scrutinized. Dillard stated that he and his co-workers were initially restricted solely to conversations about work when they moved to the 901 facility, although he says that later changed. Dillard's supervisor personally edited all of his memoranda and letters, required him to sign in and out for lunch, and denied his vacation requests, causing him to lose money on pre-purchased airline tickets. According to Dillard's supervisor, however, this scrutiny is standard for the managers in his division. Dillard also stated that his department was chronically understaffed and that he was not allowed to fill vacant positions, although the CTA maintains that staffing levels were consistent throughout his division. Dillard also attributes a negative performance evaluation he received in 2000 to retaliation; his supervisor, however, contends that the evaluation stemmed from the large backlog of unprocessed invoices in Dillard's department.

The district court granted the CTA's motion for summary judgment. The court first concluded that any alleged Title VII violations that occurred more than 300 days before the filing of Dillard's charge were time-barred. With regard to Dillard's two remaining failure-to-promote claims, the court held that Dillard had not established a prima facie case because he had not put forth evidence that he had the specific skills required by the job postings or that the applicants who received the positions were not as qualified as he. The court also rejected Dillard's retaliation claims based on a failure to promote; Dillard failed to show that he had the technical skills necessary for these positions or that he had even properly applied for them. As to the conditions of Dillard's employment that he claimed constituted retaliation, the district court concluded that they did not rise to the level of adverse employment actions, and that even if they did, they were conditions to which the entire department was subject and therefore not evidence that Dillard was treated "less favorably" than similarly-situated employees.

On appeal, Dillard presents an undeveloped argument that the district court erred in determining that he "failed to put forward any evidence to support one or another allegation in his case." Dillard recites a litany of various facts that he claims the district court "ignored" or "overlooked," without explaining how any of these might establish a prima facie case of race discrimination or retaliation. Indeed, some of the facts do not appear to be relevant at all, while others simply relate incidents that Dillard baldly alleged to be discriminatory or retaliatory. Some of these facts, such as those concerning work conditions at the 901 facility, are facts that were expressly considered by the district court in its order. Regardless, none of these facts are material to the district court's stated bases for granting summary judgment on his failure-to-promote and retaliation claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial").

██ The district court rejected Dillard's failure-to-promote claims because he could not show 1) with regard to the General Manager of Quality Assurance position, that he was qualified, and 2) with regard to the Lead Manager of Receiving and Management position, that he had applied. The court correctly determined that Dillard's failure to prove either his qualifications or his actual application for these positions would doom his case. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620–621 (7th Cir.2001); *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir.2000). And none of the facts identified by Dillard on appeal establish either that he was qualified for the GMQA position or that he applied for the LMRM position. Dillard cites to his degree, his work experience in engineering, and to his success in "creating new protocols and reports" since his arrival at the CTA, but none of these establishes that Dillard had the specific skills required by the GMQA position, such as experience in "specification engineering, quality inspection, vendor performance, contract administration, and procedures and standards." Accordingly, summary judgment on his failure-to-promote claims was appropriate.

██ Similarly, the district court also rejected Dillard's retaliation claims based on the CTA's failure to promote him because he could not show 1) with regard to the positions of Manager of Administrative Services and General Manager of Engineering and Technical Services, that he was qualified, and 2) with regard to the position of Manager of Specification Engineering and Inspection, that he properly applied. The district court was correct that his failure to make these showings was fatal. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir.2003). Dillard has not cited any facts on appeal that would have established either his

qualifications for the MAS or GMETS positions or his actual application for the MSEI position. Dillard points only to the general evidence of his qualifications discussed above and to the fact that the GMETS position went to a white male. And he does not dispute that he failed to send a formal application to the personnel office, as the job posting for the MSEI position required. Accordingly, summary judgment was appropriate on this claim.

██ The district court next concluded that Dillard's retaliation claims based on the CTA's decision to transfer him failed because "the decision to transfer Dillard's department was made *prior to* him engaging in protected activity." The court was correct that retaliation cannot occur before a plaintiff has engaged in protected expression. *See Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir.2003). The facts Dillard lists in his brief do establish at least some form of expression before the disputed transfer decision—Dillard enumerates six separate occasions on which he complained to supervisors that he believed promotion decisions had been based on race. But informal oral complaints do not constitute protected expression where an employer maintains a formal process for employees to communicate claims of discrimination. *Durkin*, 341 F.3d at 615. The CTA had such a system, and Dillard did not utilize it until May 25, 2000, the day after his transfer to the 901 facility was announced. Accordingly, this transfer cannot be viewed as retaliation for protected expression under Title VII, and summary judgment on this claim was appropriate

██ The district court rejected Dillard's retaliation claim based on his work conditions at the 901 facility because he could not establish that these conditions 1) were "less favorable" than those faced by employees who had not complained of dis-

crimination or 2) altered the terms of his employment sufficiently to constitute an "adverse employment action." The district court was correct that a plaintiff alleging retaliation must show both that he received disparate treatment from non-complaining employees, *see Cambridge Indus.*, 325 F.3d at 897, and that he suffered more than mere "unhappiness and inconvenience," *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 532 (7th Cir.2003). Dillard's brief does not point to any "overlooked" facts that cast the district court's conclusion into doubt. In fact, Dillard addresses this issue only by listing once again the conditions he claims amount to retaliation, i.e. the lack of carpeting, window blinds, and a direct phone line in his office. The district court expressly addressed those conditions in its order, so Dillard's claim that these facts were "ignored" is clearly incorrect. Dillard assigns no other error to the district court's conclusion, and regardless, the employment conditions of which he complains were little more than inconveniences and insufficient to constitute adverse employment actions under Title VII. *See Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir.2002) (only conditions that are "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative" constitute adverse employment actions).

■ Dillard also somewhat vaguely contends that the district court erred when it "refused, categorically, to consider" evidence of promotions he claims he was denied more than 300 days before he filed his EEOC charge. He argues, without further explanation, that, although time-barred, these employment decisions were relevant to his timely failure-to-promote and retaliation claims "for background purposes, to show motive or to show the severity of non-time-barred conduct."

Typically, acts of discrimination occurring more than 300 days before a plaintiff's filing of a discrimination charge with the EEOC are not actionable under Title VII. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 720–21 (7th Cir.2004). We have, however, left open the possibility that time-barred acts might be considered as relevant background evidence for a plaintiff's timely claims. *Davis v. Con–Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 786 n. 4 (7th Cir.2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

Contrary to Dillard's assertions, evidence that the CTA has previously denied him promotions has little or no relevance to his timely failure-to-promote and retaliation claims. These prior employment decisions are not probative of any element of the prima facie case. Even if Dillard could show that the CTA failed to promote him a thousand times, this still would not establish that he was qualified for the promotions he unsuccessfully sought in this case, and his failure-to-promote claims would still fail. At best, the CTA's repeated refusal to promote Dillard might have been evidence that its explanations for these decisions were pretextual, *see Con–Way*, 368 F.3d at 786 n. 4, but Dillard's case never reached that point. The district court treated this evidence appropriately.

Accordingly, the judgment of the district court is AFFIRMED.