Jonathon M. MARK, Plaintiff,

v.

Off. GUSTAFSON; Sgt. McArther; Lt. Dohms; Unit Manager Dougherty; Mr. Brown (head of PRC); Stephen M. Puckett, Defendants.

No. 05–C–279–C.

United States District Court, W.D. Wisconsin.

Aug. 30, 2006.

Diane L. Milligan, Assistant Attorney General, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiff Jonathon M. Mark, an inmate of the Oakhill Correctional Institution, contends that (1) defendants Daqian Gustafson and James McArthur interfered with his right to freely exercise his religious beliefs when they removed "magic seals" from the walls and door of his prison cell and (2) defendants Warren Dohms, Steven Dougherty, Michael Brown and Stephen Puckett conspired to violate plaintiff's right to access the courts by transferring him to a prison that lacked the legal resources he needed to pursue various lawsuits he was litigating. Jurisdiction is present under 28 U.S.C. § 1331.

On January 27, 2006, defendants moved for summary judgment. I granted their motion in an order dated March 31, 2006, after finding that plaintiff had failed to respond to defendants' proposed findings of fact in the manner required by this court's summary judgment procedures and that defendants were entitled to judgment in their favor as a matter of law. However, on April 3, 2006, three days after judgment was entered, plaintiff submitted an affidavit to the court in which he averred that he had "never received from this court or otherwise the 'Procedure to be Followed on Motions for Summary Judgment.'" Consequently, on May 2, 2006, I vacated judgment, provided plaintiff with a new copy of the court's procedures and gave plaintiff a renewed opportunity to oppose defendants' motion in accordance with the procedures he had been given.

Now defendants' motion for summary judgment is before the court a second time. Although plaintiff responded to defendant's submissions as required by the court's procedures, he did not dispute the essential facts set forth by defendants and he did not propose facts of his own that would support his claims against defendants. Because plaintiff has not produced evidence from which a jury could reasonably infer that defendants violated his right to freely exercise his religious beliefs or his right of access to the courts, defendants' motion will be granted. The infirmities in plaintiff's case are the same now as they were in March 2006; consequently, I have altered the original opinion only minimally to address points raised by plaintiff in his opposition brief.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Jonathon Mark is an inmate of the Oakhill Correctional Institution in Oregon, Wisconsin. Plaintiff was incarcerated previously at the Jackson Correctional Institution in Black River Falls, Wisconsin and the Milwaukee Secure Detention Facility in Milwaukee, Wisconsin.

Defendant Daqian Gustafson has been employed as a correctional officer at the Jackson Correctional Institution since 2003.

At all times relevant to this lawsuit, defendant James McArthur was employed as a correctional sergeant at the Jackson Correctional Institution. Since March 2004, defendant McArthur has been employed as a sergeant at the New Lisbon

Correctional Institution in New Lisbon, Wisconsin.

Defendant Steven Dougherty has been employed as a correctional unit manager at the Jackson Correctional Institution since March 13, 2000.

At all times relevant to this lawsuit, defendant Warren Dohms was employed as a correctional lieutenant at the Jackson Correctional Institution. Since March 2004, defendant Dohms has been employed at the New Lisbon Correctional Institution, where he is a captain.

At all times relevant to this lawsuit, defendant Michael Brown was employed as an offender classification specialist with the Wisconsin Department of Corrections Bureau of Offender Classification and Movement. As an offender classification specialist, defendant Brown was responsible for determining inmate custody levels and assigning inmates to appropriate programs and institutions. Defendant Brown is now a lieutenant with the Wisconsin Department of Corrections Division of Adult Institutions.

At all times relevant to this lawsuit, defendant Stephen Puckett was the director of the Bureau of Offender Classification and Movement. He is now retired.

### B. *Plaintiff's Magic Seals*

At various times during his confinement in the Wisconsin prison system, plaintiff identified himself to prison officials as a pagan, a Wiccan, a "working magician" and a "ritual magician." While incarcerated, plaintiff attended Wiccan religious group services and wore a "religious emblem."

In the spring of 2003, plaintiff was incarcerated at the Jackson Correctional Institution. In an inmate complaint dated March 3, 2002, plaintiff alleged that "religious seals" were taken from the walls and door of his cell by defendants MacArthur and Gustafson during a routine cell search.

Defendants MacArthur and Gustafson do not remember searching plaintiff's cell in February 2003. However, if defendant MacArthur had seen papers on the wall or door of plaintiff's cell, he would have taken them in accordance with institution policy. When defendant Gustafson finds items attached to the interior of an inmate's cell, it is her practice to remove the items and place them on the inmate's table.

In a response to plaintiff's inmate complaint, prison officials stated:

> Provided the religious materials that Inmate Mark refers to in this complaint are not considered contraband (i.e. altered), he is permitted to keep them in his possession. However, he is still required to follow institution rules regarding cell standards.

According to prison officials, plaintiff may possess his "seals"; however, he may not affix them to the walls or door of his cell.

Wisconsin Department of Corrections Internal Management Procedure Number 309–6A states in relevant part:

> Inmates are permitted to possess approved religious property associated with their designated religious preference, unless the item presents a threat to the order and safety of the institution . . .
>
> Items will be subject to regulations applicable to the location and storage of inmate property . . .
>
> Religious property will be recorded on a DOC–237 Property Disposition Receipt . . .
>
> Inmates will be permitted to wear or use religious property items during individual practice, religious ceremonies, congregate services and meetings consistent with institution policy and procedures.

Inmates at the Jackson Correctional Institution are expected to follow the rules outlined in the institution's handbook.

The institution handbook indicates that "all inmate personal property, excluding electronic equipment, typewriters, fans, etc., shall be stored in receptacles provided by the institution." (Requiring inmates to store personal property in a single receptacle makes cell searches and property inventories more efficient.)

In addition, the institution handbook states that all authorized inmate personal property must be recorded on a personal property list. Authorized items not recorded on an inmate's property list are considered contraband and may be seized in accordance with prison rules.

The institution handbook contains the following passage:

Nothing is to be placed on the cell lights, windowsill, window bars, or between the window and the screen. Tape, tacks, glue, etc. may not be used to attach anything to the interior of the cell (for example, on walls, the ceiling, the door, furniture or fixtures).

The prison prohibits inmates from affixing items to their cell walls, door and windows for several reasons. First, most inmates share cells with another person. By prohibiting inmates from affixing items to cell walls, the rule promotes safety by reducing the opportunity for inmates to fight about what items are placed on walls and who gets the most or best "wall space" for his items. The rule also eliminates the risk that contraband will be concealed behind objects on windows, doors or walls, or that items will cause physical damage to the cell doors or walls when they are removed.

C. *Plaintiff's Transfer to the Milwaukee Secure Detention Facility*

On May 1, 2003, defendants Brown and Dohms participated in a program review committee meeting regarding plaintiff's institutional placement. Before attending the meeting, defendant Brown reviewed a report prepared by plaintiff's social worker. According to the report, when the social worker met with plaintiff in April 2003, plaintiff did not make any specific requests regarding his institutional placement or upcoming program review committee meeting. In her report, plaintiff's social worker indicated that plaintiff was eligible for placement in a minimum security institution, and recommended that his placement be determined "by bed space and program needs." Prior to the May 1, 2003 meeting, defendant Dohms and defendant Brown had not spoken with each other or anyone else about plaintiff's institutional placement.

After providing plaintiff with an opportunity to give his views at the May 1 program review committee meeting, the committee deliberated privately, as it always does. The committee noted that plaintiff was eligible for placement in a minimum security institution and that he was two years away from his mandatory release date (August 19, 2005). The committee found that plaintiff had shown positive institutional adjustment, had a low risk rating and was scheduled for parole review in nine months.

Generally, as inmates approach their mandatory release date, the program review committee tries to move them to lower security facilities close to their homes, so they can more easily reconnect with their families and communities in preparation for release. In addition, the committee tries to place inmates in institutions that are capable of meeting the inmates' programming needs.

Plaintiff had been sentenced in Fond du Lac County and was on the waiting list for a level 5B alcohol and drug program. The waiting list for the 5B alcohol and drug treatment program at the Jackson Correctional Institution was extremely long. Therefore, the committee recommended

unanimously that plaintiff be transferred to the newly-opened minimum custody Milwaukee Secure Detention Facility, which was located in the same region as Fond du Lac County and offered the treatment program plaintiff needed.

At the time the committee decided to transfer plaintiff to the Milwaukee Secure Detention Facility, defendant Brown was aware that inmates were spreading rumors that the facility lacked adequate legal resources. However, defendant Brown believed that no institution would open unless it were equipped with necessary legal resources. Similarly, defendant Dohms believed the facility had adequate legal resources.

Defendant Dougherty attended plaintiff's program review committee hearing on May 1, 2003; however, he did not speak with anyone regarding plaintiff's institutional placement and had no involvement with plaintiff's transfer to any institution in the Wisconsin Prison System.

In a letter dated May 2, 2003, addressed to defendant Brown, plaintiff appealed the decision to transfer him to the Milwaukee Secure Detention Facility and asked that his transfer be "put on hold." Bureau Section Chief Molly Sullivan Olson responded to plaintiff's letter on Brown's behalf, stating:

> Your appeal/request was reviewed. Custody and site designation are appropriate based upon [Wis. Admin. Code § DOC] 302.07 and 09. This is appropriately explained in the PRC Classification Summary of 05/01/03. You have subsequently been transferred to MSDF (June 4, 2003). This continues to be appropriate as per the PRC documentation.

In letters to defendant Stephen Puckett dated May 10, 2003, and October 8, 2003, plaintiff wrote that he did not want to be transferred from the Jackson Correctional Institution because he wanted to "study case law pertaining to [his] litigation at an average of 6 to 8 hours a day" and that he had "no time" to complete his drug and alcohol program because his litigation had higher priority for him and he wanted to file three civil suits.

On June 18, 2003, Sullivan Olson responded to plaintiff's May 10 letter on Puckett's behalf, stating:

> Your appeal/request was reviewed. Custody and site designation are appropriate based upon [Wis. Admin. Code § DOC] 302.07 and 09. This is appropriately explained in the PRC Classification Summary of 05/01/03. While the litigation issues are respected, those do not override the correctional case plan for [you]. You have an AODA 5B need which can be [addressed] at MSDF. Noted is your transfer to that site on 06/04/03. You continue to be scheduled to enroll in the 06/30/03 group. It is hoped that you take full advantage of this treatment opportunity afforded you.

Defendant Puckett responded to plaintiff's October "appeal" letter, stating that the letter would not be considered because it was received after the deadline for appealing the transfer decision.

While confined at the Milwaukee Secure Detention Facility plaintiff did not have, access to reference material with which to locate " 'cites' of specific or even generalized case laws." Although the facility had legal materials available, many of them were outdated and none of them explained "current legal theories, causes of action and how each is set out and to be applied." Because plaintiff could not identify a legal basis for bringing his postconviction motion in state court, his claims were dismissed.

## OPINION

### A. *Removal of Magic Seals*

Inmates raising claims under 42 U.S.C. § 1983 that government officials have im-

peded their ability to practice their religious beliefs have two means of recourse: the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1, and the free exercise clause of the First Amendment. I will address each in turn.

1. *RLUIPA claim*

 The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc–1(a)(1)–(2), prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2114, 161 L.Ed.2d 1020 (2005). RLUIPA is designed to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 2122.

The protections afforded by RLUIPA apply where:

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc–1(b). Because the Wisconsin Department of Corrections receives and uses federal grant money for substance abuse treatment programs in its state prison facilities, the requirements of the Act apply to it.

To show that his rights under RLUIPA were violated, plaintiff must first establish that defendant's refusal to let him place his "magic seals" on the walls or door of his prison cell placed a substantial burden on the exercise of his religious beliefs. 42

U.S.C. § 2000cc–2(b); *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Although RLUIPA does not define the term "substantial burden," the Court of Appeals for the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003). Under the statute, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

Plaintiff has not explained the religious significance of his "magic seals" or of their placement on his cell walls or door. It is undisputed that plaintiff has identified himself as a "ritual magician" and it is therefore reasonable to infer that his "magic seals" were somehow an expression of his belief in magic. However, in order to meet his burden, plaintiff was required to show not only that his "magic seals" were religious, but that their placement on his door and walls had religious meaning for him. In light of his failure to do so, defendants' motion could be granted on that ground alone.

However, defendants' motion would be granted even if plaintiff had shown that his inability to place magic seals on his door and windows imposed a significant burden on his religious practice. Under RLUIPA, once a prisoner has shown that the actions of government officials have significantly burdened the exercise of plaintiff's religious beliefs, the burden shifts to defendants to demonstrate that their decision was the least restrictive means of furthering a compelling government interest. *See, e.g., Murphy v. Zoning Comm'n of the Town of New Milford,* 148 F.Supp.2d 173,

187 (D.Conn.2001). In addressing a recent challenge to the constitutionality of the Act, the United States Supreme Court emphasized that the religious accommodations guaranteed by RLUIPA may not override other significant governmental interests. *Cutter*, 125 S.Ct. at 2122. Specifically, the court held:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety ... [and] have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns.

*Id.* at 2122–2123.

It is undisputed that the prison policy prohibiting inmates from attaching items to cell interiors is intended to prevent unnecessary damage to prison cells, reduce hiding places for contraband, simplify cell searches and property inventories and eliminate unnecessary causes of contention between cellmates. In short, the policy is designed to advance prison order and security.

Plaintiff asserts that he would never engage in the conduct prison officials fear: that is, he would not hide contraband under the seals, would not affix them in a way that would harm the walls or place them in a location that would make it difficult for prison guards to see into his cell. However, prison officials are not required to tailor their policies to each individual prisoner and the risks each poses to prison security. All prison officials must do is enact policies that reasonably advance legitimate penological goals and interests. Defendants' policy banning prisoners from affixing items to the walls or doors of their prison cells does just that.

Because the prison had a clear interest in advancing security, the only question remaining is whether the policy advanced the prison's interest by the least restrictive means available. Prison officials permitted plaintiff to keep his "magic seals" in his cell and use them as he wished, so long as he listed the items on his personal property inventory, stored them in his receptacle when they were not in use and did not affix them to prison walls, windows or doors. Although plaintiff objects to being prohibiting from placing the seals on his cell walls, he does not assert that he was unable to place them on the floor at the base of each wall, or otherwise arrange the seals on the ground or propped against the walls of his cell. Given these facts, defendants' decision to remove plaintiff's seals from his door and walls was an appropriate and narrowly-tailored response to legitimate security needs. Because plaintiff has not shown that defendants' policy violated his rights under RLUIPA, defendants' motion for summary judgment will be granted with respect to this claim.

### 2. *First Amendment claim*

■ The protections offered by the First Amendment are more limited than those extended under RLUIPA. Therefore, any claim that fails under RLUIPA will fail inevitably under the First Amendment's more stringent requirements. Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc–5(7), traditional First Amendment jurisprudence protects only "the observation of [ ] central religious belief[s] or practice[s]." *Civil Liberties for Urban Believers*, 342 F.3d at 760.

Again, although plaintiff has identified himself as a "ritual magician," plaintiff did not propose facts relating to his religious beliefs and explaining how the practice of placing "magic seals" on his cell walls and door was central in any way to the exercise of those beliefs. Because plaintiff did not show that defendants Daqian Gustaf-

son and James McArthur interfered with his ability to observe a central practice of his religion, defendants' motion for summary judgment will be granted with respect to plaintiff's claim that defendants' actions violated his First Amendment rights.

### B. *Transfer to the Milwaukee Secure Program Facility*

■ As I explained to plaintiff in the order granting him leave to proceed on his civil conspiracy claim against defendants Dohms, Dougherty, Brown and Puckett:

> [T]o succeed on his claim under § 1983, he will need to adduce evidence showing that defendants reached an understanding to deprive him of his constitutional rights. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir.2003). This evidence may be circumstantial in nature but it must amount to more than plaintiff's speculation as to defendants' motives. *Id.*

Order dated Jul. 6, 2005, dkt. # 4, at 25–26.

The undisputed facts show that defendants Dohms and Brown determined that plaintiff needed to be transferred to a prison closer to Fond du Lac County, in light of his pending release date and treatment needs. Nothing about the nature or timing of their decision gives rise to even a remote inference that they made their decision to transfer plaintiff in an attempt to thwart his ability to litigate his lawsuits. Furthermore, the facts reveal that defendant Dougherty had no involvement in the decision to transfer plaintiff to the Milwaukee Secure Detention Facility and defendant Puckett's only connection to the transfer was his after-the-fact responses to plaintiff's appeal of the transfer decision.

In his brief in opposition to defendants' motion for summary judgment, plaintiff concedes that he "cannot bring, at this time, and in this motion in opposition [to] summary judgment, any issue of material fact to dispute defendants' defense on the conspiracy claim." Dkt. # 57, at 10. As he did in March, plaintiff asserts that his attempts to prove his case against defendants have been hampered by his ex-girlfriend's refusal to provide him with unspecified paperwork in her possession. Plaintiff has made no effort to explain how the unidentified papers have any bearing on his case or made any alternative arrangements to obtain the evidence he believes will prove that defendants conspired against him. As I explained to plaintiff in the March 31 order:

> The Court of Appeals for the Seventh Circuit has stated repeatedly that summary judgment is the "put up or shut up" moment in a lawsuit. A party's failure to show what evidence he has to convince a trier of fact to accept his version of the facts will result in summary judgment for the opposing party. Fed.R.Civ.P. 56(e); *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir.2003); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Dkt. # 49, at 17. Because plaintiff has offered no evidence to show that defendants acted together to deprive him of any constitutional right, defendants' motion for summary judgment will be granted with respect to plaintiff's claim that defendants Dohms, Dougherty, Brown and Puckett conspired to deprive him of his right of access to the courts.

### ORDER

IT IS ORDERED that the motion for summary judgment of defendants Daqian Gustafson, James McArthur, Warren Dohms, Steven Dougherty, Michael Brown and Stephen Puckett is GRANTED. The clerk of court is directed to enter judg-

ment in favor of defendants and close this case.