**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 19, 2016[*]
Decided January 20, 2016

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-3575

JACKIE CARTER,
    *Plaintiff-Appellant*,

    *v.*

MICHAEL MEISNER, *et al.*,
    *Defendants-Appellees*.

Appeal from the United States
District Court for the
Western District of Wisconsin.

No. 12-cv-574-wmc

William M. Conley,
*Chief Judge*.

## O R D E R

Jackie Carter, a state prisoner at Columbia Correctional Institution ("CCI") in Wisconsin, sued several employees of the prison under 42 U.S.C. § 1983 for being deliberately indifferent to his medical need for orthotic footwear and pain medication and for failing to provide him with adequate clothing. The district court granted summary judgment to the defendants on all claims. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Carter suffers from several illnesses—including peripheral neuropathy, plantar fasciitis, stasis dermopathy, fibromyalgia, and back pain—and in fall 2009 he received a prescription for orthotic footwear. In October Dr. Dalia Suliene, a physician at CCI, provided Carter with a referral for a podiatry consultation at the University of Wisconsin Hospital for his peripheral neuropathy. A month later, the UW podiatrist prepared custom-molded orthotic inserts for Carter's shoes and recommended that he wear high-top boots to provide him with ankle support. In February 2010 the "special needs committee" at CCI followed the podiatrist's recommendation and approved a pair of high-top boots for Carter.

During the period at issue in the suit (May 2010 to July 2012), Carter agreed that he always had available to him a pair of state-issued, high-top boots when he was housed in segregation, and both the boots and his personal shoes with the custom orthotics when he was housed in general population. But Carter nonetheless believed that the footwear provided to him was inadequate.

In September 2010 Carter lost his Velcro high-top boots. Captain Dylon Radtke (not a defendant in this suit) issued him an identical new pair and informed Carter in a memo that the boots "have been reviewed by [medical] staff who [have] informed me they meet your medical needs." Over the next several months, while housed in segregation, Carter complained continually that he was entitled to have his personal shoes. Captain Donald Morgan responded in writing several times, explaining that no personal shoes were permitted to inmates in segregation and that the boots provided to him had been evaluated and determined to be appropriate.

Carter believed that the boots with laces provided to him when he returned to general population in July 2011 were also inadequate. In January 2012 Carter complained that he needed a new pair of boots with laces. Sergeant Raymond Bandeko offered Carter a replacement pair, but Carter refused to accept them because they were used. Sergeant Bandeko raised Carter's complaints with Karen Anderson, the health-services manager at CCI, who first told him that Carter's current boots appeared to be in "good condition" and later told Bandeko that Carter had no medical need for new boots. Bandeko responded to Carter's complaints again two months later, when he inspected Carter's boots, and concluded that the boots were "still serviceable." Noting that Carter's boots had broken laces, he provided Carter with a new pair. In July 2012 Captain Morgan responded to Carter's latest request for a new pair of boots, explaining again that Carter had no documented medical need for new boots.

Another of Carter's claims concerned his assertion that he had been provided with only a single set of clothes while housed in general population between July 21, 2011 and July 30, 2012. When Carter was released from segregation and returned to general population in July 2011, the laundry department sent Carter a full complement of clothes: 4 pairs of socks, 4 pairs of underwear, 4 T-shirts, 3 pairs of pants, a spring jacket, a winter coat, 3 towels, and 3 washcloths. But Carter immediately rejected the clothes because they were the wrong size and had them returned to the laundry. According to Carter, he never received any more clothes from the laundry. (The defendants say that Carter did receive clothes.) He was forced to wear the single set of clothes he had had in segregation for the next year. The clothes from segregation could not be sent to the laundry because they did not have his name and unit information on them, so he could wash them only in the sink in his cell. He had nothing else to wear when he washed them. Carter also stated that he had access to a dumpster of old clothes that were used for rags and mops, but he said these were frequently dirty.

Carter continually attempted to obtain a full complement of clothes. He says he submitted formal requests to the laundry. (The defendants contest this fact, saying that they could find no records that he made any formal requests, though they admit that inmate clerks in the laundry keep imperfect records.) Carter also repeatedly asked officers in his unit for assistance, and they called down to the laundry on his behalf. Carter acknowledged that Bandeko, the only defendant named in this claim, did not become laundry sergeant until December 2011, five months after Carter was initially denied adequate clothing.

The district court granted summary judgment to the defendants on Carter's claims relating to the denial of footwear and clothing.[1] Regarding the denial of footwear, the court concluded that Carter had demonstrated a serious medical need for his prescription footwear, but agreed with the defendants that no evidence supported the conclusion that they had acted with deliberate indifference to that need. Throughout the period relevant to the suit, the court noted, Carter had access to high-top boots. The court treated Carter's denial-of-clothing claim as a challenge to his conditions of confinement and concluded that no evidence suggested that Bandeko was aware of Carter's circumstances. First, the court explained, it was undisputed that Bandeko was

---

[1] The district court also granted summary judgment to the defendants on three other claims—that they had denied him methadone, failed to follow a neurologist's advice, and failed to process administrative grievances—but Carter does not challenge these determinations on appeal, so we do not address them.

not working in the laundry in July 2011 when Carter returned to general population and was not provided with clothes. Second, Carter's assertion (set forth in his brief on summary judgment) that he had spoken with Bandeko directly about his clothing needs was unsupported by the deposition testimony he cited, which stated only that he had spoken about the matter to his unit sergeant.

On appeal Carter broadly asserts that the district court erred in concluding that the defendants had not "refused" to provide him with his "medically prescribed footwear in [the] form of Hi-top boots." But the undisputed evidence, as the district court found, shows that the defendants ensured that Carter always had access to high-top boots, and when he was not in segregation, to his personal shoes and orthotics as well. The defendants were responsive to his complaints about his footwear, obtaining new boots for him when he lost a pair, examining the boots to ensure that they were in good condition, and confirming with medical staff that the boots met the podiatrist's recommendation. Nothing suggests that the defendants were deliberately indifferent to Carter's need for prescribed footwear. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015). And even if the boots themselves were inadequate (a point that Carter does not now press), the defendants were entitled to "rely on the expertise of medical personnel," who concluded that the boots fit the description provided by the podiatrist. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

Carter also generally challenges the district court's grant of summary judgment to Bandeko on the denial-of-clothing claim. To his appellate brief, he attaches affidavits from other inmates that, he says, are evidence that he had no more than one set of clothes during the period in question.

But Carter's argument on appeal misses the mark. First, we will not consider new evidence on appeal, *see Hart v. Sheahan*, 396 F.3d 887, 894 (7th Cir. 2005), and the affidavits Carter has attached to his brief were not submitted to the district court. And even if they had been, they do not suggest that the district court erred. The court accepted for purposes of summary judgment that Carter had been provided with only one set of clothes for a year and that this could be considered a denial of "'the minimal civilized measure of life's necessities'" as required under the Eighth Amendment. *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). But it nonetheless granted summary judgment to Bandeko on this claim because no evidence suggested that the sergeant was aware Carter had only one set of clothes.

Carter points to no evidence in the record that contradicts this conclusion. As the court correctly determined, the pages of Carter's deposition that he cited in his district-court filings show only that he reported his lack of adequate clothing to his unit sergeant, not to Bandeko himself. We hold litigants "to the evidence [they] cite[] to the district court" at summary judgment. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). District courts cannot be expected "to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Id.*

The district court's grant of summary judgment is AFFIRMED.