In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1266

JOHN D. LUMMIS and CYNTHIA A. MACBETH,

*Plaintiffs-Appellants,*

*v.*

STATE FARM FIRE & CASUALTY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 04 C 80—**David F. Hamilton**, *Judge.*

ARGUED OCTOBER 31, 2006—DECIDED DECEMBER 5, 2006

Before POSNER, WOOD, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Most people who watch television can sing it: "Like a good neighbor, State Farm is there." John Lummis thinks State Farm should have been, but wasn't, "there" for him after a fire destroyed his home in Jamestown, Indiana. And State Farm's refusal to cover the loss gave birth to this litigation, which ultimately included a jury trial and a prior ruling on a motion for summary judgment that took a critical issue out of the jury's hands. Only the summary judgment matter is before us on Lummis's appeal.

The house Lummis "owned" (we use quotation marks because his grip on the home was rather tenuous) was

covered by a State Farm homeowner's policy. Like all policies of this sort, an insurer is excused from paying if the insured is intentionally complicit in setting the fire that led to the loss. And that's the position State Farm staked out soon after the house burned to the ground.

Lummis, and his ex-wife Cynthia Macbeth, sued State Farm on two claims: breach of contract and bad faith. Like his house, the bad-faith claim was gutted when the district court dismissed it on summary judgment. Subsequently, a jury found that State Farm breached the contract by not covering the loss. Lummis and Macbeth were awarded $46,800.46 in damages and, because the jury rejected a State Farm counterclaim, they were not ordered to pay back various sums (we're not sure, but it looks like they add up to something in the neighborhood of $25,000) advanced under the policy on a reservation-of-rights basis. Although State Farm eventually had to honor the policy, whether "bad faith" motivated its decision to refuse to ante up is another story. Here are the facts (some of them, at least) that are important on the issue before us.

For some time prior to the fire, Lummis lived in the Jamestown house with his girlfriend, Beth Howe, and her three children. And Lummis was in a financial bind: between the $1,300 a month garnished from his wages in order to pay child support for four of his six children, and supporting Howe and her three children, he had not made a mortgage payment for almost 2 years. The mortgage holder (the Cendant Mortgage Company), who had been paying the premiums on the State Farm policy, obtained a foreclosure decree on the house on February 5, 2003. The fire occurred the very next day.

Howe called 911 to report the fire around noon. She then called Lummis at work. Most people, upon learning that their house is on fire, would hurry home as fast as

possible. Not Lummis. Lummis's boss offered him a ride home immediately. He turned it down. He took his buddy up on the second offer of a ride later in the day. When he got to the house, he reported the fire to State Farm. He didn't seem too worried, though—the agent who took his call thought he sounded pretty nonchalant and cavalier about the whole thing. State Farm started the claims process and an investigation into the cause of the fire as soon as it got the call.

One of the most important clues to the fire's origin was a red plastic container found at the scene that tested positive for traces of gasoline and kerosene. Firefighters know this mixture—which burns "long and hot"—is an ideal accelerant for a fire. Lummis, who was a volunteer firefighter with the Jamestown Fire Department for about 7 years, would, State Farm concluded, be more familiar with this mixture as an accelerant than would the average Joe. Ultimately, all investigators who looked into the fire determined that it was started intentionally. State Farm concluded that Lummis, perhaps with help from Howe, intentionally started the blaze, so it denied coverage.

We review grants of summary judgment *de novo* and will uphold them only if no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. And here, of course, we draw all factual inferences in favor of Lummis. *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475 (7th Cir. 2004); *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). Since this is a diversity case, we apply the substantive law of the forum state, Indiana. *Erie v. Tompkins*, 304 U.S. 64, 78 (1938); *Wolverine Mut. Ins. v. Vance*, 325 F.3d 939, 942 (7th Cir. 2003).

Lummis's task on his bad-faith claim was to demonstrate that a reasonable jury could conclude that State Farm

denied coverage without a rational, principled basis for doing so. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993); *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975-76 (Ind. 2005). In Indiana, "[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Magwerks*, 829 N.E.2d at 977 (quoting *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (1998)). This is a rather heavy burden, and Lummis tried to meet it by demonstrating that State Farm's factual basis for denying coverage was weak. This argument, however, shoots itself in the foot because it implicitly acknowledges that there was evidence to support State Farm's position. In fact, a summary of some of that disputed evidence is spread over three pages, graph-style, in 13 different categories in Lummis's brief. And it's important to remember that State Farm's reading of that evidence doesn't have to be accurate. It just can't be irrational.

Two points are particularly important, when combined with the fact that arson, by someone, was unquestionably committed. First, State Farm sent Lummis notice before the fire that he had coverage under the policy even though his mortgagee was paying the premiums. Second, when reporting the claim to State Farm on the day of the fire he was "nonchalant and cavalier." That, to State Farm, seemed odd. We agree.

Add to this the fact (1) that Lummis had a potential financial benefit in collecting something under the policy; (2) that he was in a financial pinch; (3) that he and Howe purchased gasoline the morning of the fire; (4) that Howe removed her dog from the house before it burned down; and (5) that the fire occurred one day after the fore-closure proceeding, and State Farm's position, as a matter of law, simply can't be viewed as unreasonable or motivated by ill will.

Based on all the evidence, no reasonable jury could find that State Farm denied Lummis's claim knowing there was *no* rational, principled basis for believing he, perhaps with Howe, were involved in setting the fire. *See Dean v. Ins. Co. of North Am.*, 453 N.E.2d 1187, 1194 (Ind. Ct. App. 1983) (permitting an insurer to rely on circumstantial evidence to conclude that policyholder committed arson). Lummis did not meet his burden of showing a genuine issue of material fact as to whether State Farm acted with a dishonest purpose, moral obliquity, furtive design, or ill will when it denied his claim. *Magwerks*, 829 N.E.2d at 977. This conclusion makes it unnecessary for us to consider State Farm's cross-appeal which challenges the district court's reasoning that Indiana law did not require a clear and convincing evidence standard for a bad-faith claim.

The judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*
