In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1885

WILLARD L. HEMSWORTH, II,

*Plaintiff-Appellant,*

*v.*

QUOTESMITH.COM, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5622—**Virginia M. Kendall**, *Judge.*

ARGUED JANUARY 17, 2007—DECIDED FEBRUARY 8, 2007

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Willard L. Hemsworth, II alleges that he was fired from his position at Quotesmith.com, an Internet-based insurance services company, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* The district court granted Quotesmith's motion for summary judgment. Hemsworth argues on appeal that he has provided sufficient evidence in the record to demonstrate the existence of a genuine issue of material fact for his case to proceed to trial. We disagree and consequently affirm the district court's judgment.

## I. HISTORY

Quotesmith hired Hemsworth in November 1999 to be its Senior Vice President of Marketing.[1] Hemsworth was fifty-three years old when hired and had in excess of twenty-five years of marketing and sales executive experience. Prior to Hemsworth's hiring, Robert Bland, Quotesmith's founder, chairman, president and CEO, had been responsible for Quotesmith's marketing operations. Bland was forty-five years old when Hemsworth was hired in 1999. Bland decided to hire an experienced marketing executive because he planned to expand Quotesmith's marketing budget in 2000 from $14 million dollars to $20 million dollars.

Hemsworth interviewed with Bland and Quotesmith's Human Resources Director at the time, Karen Piccoli. Hemsworth informed Bland during the interview of various personal information including family information and his age. Hemsworth and Quotesmith agreed to a two year employment contract through December 31, 2001 that would automatically renew for an additional year unless either party gave a sixty-day written notice of termination. Hemsworth was terminated after his two-year contract expired at the end of 2001.

Quotesmith's position is that it let Hemsworth go because the company was experiencing financial losses requiring significant cost-cutting. According to Quotesmith, it had to lay-off a large number of employees and reduce its marketing and operations activities to meet its cost-cutting requirements. Hemsworth counters that

---

[1] As Hemsworth is the non-moving party, we construe all facts and make all reasonable inferences in the light most favorable to him. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006) (citing *Healy v. City of Chicago*, 450 F.3d 732, 738 (7th Cir. 2006)).

the company's business plan was to lose money in order to expand its customer base. The company, according to Hemsworth, was able to lose money because it had a recent public offering of stock. Hemsworth argues that Quotesmith actively terminated the employment of older employees during its 2001 Reduction in Force ("RIF"). He points to the fact that 84% of the employees eliminated in 2001 were over the age of forty. Hemsworth also points to a conversation between Quotesmith's General Counsel and Human Resources Director in 2001 in which a comment was made that eliminating the employment of such a large percentage of employees over forty "was a problem." Hemsworth also notes a comment from Bland and another member of Quotesmith's management in 2000 after Hemsworth experienced a mild stroke to the effect that he "looked old and tired" when he returned to work. Finally, he points to an age inappropriate comment made by a member of Quotesmith's management during an employee's evaluation. Hemsworth also alleges that he did an outstanding job at the company and this was demonstrated by the raise in his salary from $150,000 to $180,000 in his second year at Quotesmith.

## II.  ANALYSIS

"We review grants of summary judgment *de novo*." *Lummis v. State Farm Fire & Cas. Co.*, 469 F.3d 1098, 1099 (7th Cir. 2006) (citing *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475 (7th Cir. 2004); *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the

evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). In evaluating a motion for summary judgment, the district court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) ("The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims."). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *see, e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). The evidence relied upon in defending a motion for summary judgment must be competent evidence of a type otherwise admissible at trial. *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002).

The ADEA prohibits an employer from discharging an individual because of his age. 29 U.S.C. § 623(a)(1). "To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under the ADEA, age) actually motivated the employer's decision'—that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Schuster*

*v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Hemsworth can attempt to demonstrate his discrimination claims through either the direct or indirect methods of proof. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006) (citing *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006)). As we recently explained,

> The distinction between the two avenues of proof is "vague," *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006), and the terms "direct" and "indirect" themselves are somewhat misleading in the present context. For, as we recently explained in *Sylvester*, "direct" proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (*e.g.*, "You're too old to work here."), but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences. *Id.* at 902-03; *see also Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). The "indirect method" of proof involves a subset of circumstantial evidence (including the disparate treatment of similarly situated employees) that conforms to the prescription of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

*Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006). We evaluate Hemsworth's claims under both methods.

In applying the direct method of proof, we note that there is no admission from Quotesmith that it terminated Hemsworth because of his age and therefore we must determine whether Hemsworth has provided sufficient circumstantial evidence in the record to demon-

strate a genuine issue of material fact. Circumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Sun v. Bd. of Trs. of Univ. of Illinois*, ___ F.3d ___, No. 06-2438, 2007 WL 93313, at *12 (7th Cir. Jan. 16, 2007); *see, e.g.*, *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005)). Hemsworth's proposed circumstantial evidence is (1) the comment from Bland and another Quotesmith executive about his appearance immediately after his stroke in 2000, (2) the comment by the Quotesmith employee in 2001 mentioning that laying off a large number of employees over forty years old could be a problem, (3) the age-related comment made by a member of Quotesmith's management when evaluating an other employee during Hemsworth's time at Quotesmith, and (4) the large percentage of over forty year old individuals who were laid off by Quotesmith in 2001.

"[I]solated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat*, 470 F.3d at 694 (citing *Cullen v. Olin Corp.*, 195 F.3d 317, 323 (7th Cir. 1999)). However, a particular remark can provide an inference of discrimination when the remark was (1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Id.* (citing *Hunt v. City of Markham, Illinois*, 219 F.3d 649, 652-53 (7th Cir.

2000)). None of the comments complained of by Hemsworth meet the requirement for consideration as direct evidence and therefore were properly rejected by the district court. Bland's comment about Hemsworth's appearance in 2000 was made more than a year before Hemsworth's termination, the comment by the Quotesmith employee about laying off a large number of employees over forty years old was not made by a Quotesmith decision maker (and also demonstrates that Quotesmith was aware of its legal obligation under the ADEA), and the age related comment about another employee was made before the time that Hemsworth was terminated.

We are also unconvinced by Hemsworth's proposed statistical evidence because it does not provide sufficient context for a proper comparison. Hemsworth argues that 84% of the employees laid off by Quotesmith in 2001 were over the age of forty but does not explain how these other employees compare to his situation. "In order to be considered, the statistics must look at the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications, and conduct; the plaintiff and the other similarly situated employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same RIF as when the plaintiff was discharged." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 614 (7th Cir. 2000)). Statistical evidence is only helpful when the plaintiff faithfully compares one apple to another without being clouded by thoughts of Apple Pie ala Mode or Apple iPods. Hemsworth's proposed statistical evidence lacks the necessary context needed for a meaningful comparison and therefore must be rejected.

Finally, we consider Hemsworth's claims under the indirect method. Hemsworth's marketing duties were reabsorbed by Bland after Hemsworth's termination. Consequently, we must apply the indirect burden shifting method for a mini-reduction-in-force situation. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006) (citing *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000)). Hemsworth "must establish a *prima facie* case of discrimination by showing that (1) [he] is a member of a protected class, (2) [he] was performing [his] job satisfactorily, (3) [he] suffered a materially adverse employment action, and (4) [his] job duties were absorbed by employees who were not members of [his] protected class." *Id.* "The burden of production then shifts to the defendant to show legitimate, nondiscriminatory reasons for its actions. Finally, the burden shifts back to the plaintiff to attempt to show that the defendant's stated reasons are pretextual." *Id.*

Hemsworth cannot meet his requirements under the indirect method. His job duties were reabsorbed by Bland, an individual who is also within the protected class because he is over the age of forty. Additionally, even if we overlook Hemsworth's failure to make his *prima facie* case, Quotesmith has provided a legitimate, nondiscriminatory reason for Hemsworth's termination due to its financial downturn. Hemsworth has not rebutted that explanation.

### III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*