In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1952

HEATHER GILLESPIE AND ANGELA CINSON,

*Plaintiffs-Appellants,*

*v.*

EQUIFAX INFORMATION SERVICES, L.L.C.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 138—**Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 30, 2006—DECIDED MAY 3, 2007

Before POSNER, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Heather Gillespie and Angela Cinson filed a class action lawsuit alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, ("FCRA") against Equifax Information Services, L.L.C. The district court granted Equifax's motion for summary judgment on the plaintiffs' claims. We reverse.

## I. BACKGROUND

Like many Americans, Heather Gillespie and Angela Cinson each defaulted on a credit account and this fail-

ure was noted in their respective credit files. Gillespie opened a credit account with Direct Merchants Bank in 1999 but the account became delinquent in 2001. Cinson opened an account with Sears in 1993 with a resulting delinquency in 1996 or 1997. Merchants and Sears sold the delinquent accounts to a collection agency, Sherman Acquisitions Company. And, of course, the delinquency information also found its way to the credit reporting agencies including Equifax, and then into Gillespie's and Cinson's credit files.

Gillespie and Cinson requested their respective consumer credit files from Equifax in 2004. Equifax provided the requisite data they possessed on Gillespie and Cinson along with accompanying explanatory material. The explanations included definitions of the terms used, answers to commonly asked questions, discussion of the consumer's legal rights, points of contact within Equifax as well as consumer and government agencies, and marketing material promoting Equifax products. Our case focuses on the "Date of Last Activity" field listed in the plaintiffs' credit files, how Equifax uses the Date of Last Activity field, and the accompanying explanations provided by Equifax about the Date of Last Activity field.

Outside creditors provide information to Equifax that Equifax places in the consumer's credit file. Creditors report both positive and negative information about the consumer. Equifax lists the date of the consumer's last activity for the reported account in the Date of Last Activity field. If the account is delinquent, with no subsequent activity, then the Date of Last Activity reflects the date of delinquency. If the consumer has been paying the account, the Date of Last Activity reflects the last payment. In the case of a previously delinquent account in which the consumer has started to make subsequent payments, the last payment by the consumer replaces the delinquency date in the Date of Last Activity field.

Equifax also provides a secondary disclosure referencing the Date of Last Activity field entitled "Facts You Should Know." The disclosure states:

Payment history on your credit file is supplied by credit grantors with whom you have credit. This includes both open accounts and accounts that have already been closed. Payment in full does not move your payment history. The length of time information remains in your credit file is shown below:

Collection Accounts:     Remain for 7 years.

Credit Accounts:         Accounts paid as agreed remain for up to 10 years. Accounts not paid as agreed remain for 7 years.

(The time periods listed above are measured from the date in your credit file shown in the "date of last activity" field accompanying the particular credit or collection account.)

J.A. at 37.

The plaintiffs allege that Equifax's disclosure is not clear and accurate as required under § 1681g(a)(1) because Equifax's disclosure does not allow them to determine whether Equifax is properly calculating the seven and one-half year limitation period as required pursuant to § 1681c(a)(4). The plaintiffs imply that Equifax makes the disclosure confusing to benefit debt collectors who are trying to collect outstanding debts. Equifax counters that it clearly and accurately discloses all of the information in the consumer's file. Equifax's position is that the consumer can simply take the date reported in the Date of Last Activity field on a delinquent account and then add seven years to determine the date that the information should be removed from the credit file.

## II. ANALYSIS

"We review grants of summary judgment *de novo*." *Lummis v. State Farm Fire & Cas. Co.*, 469 F.3d 1098, 1099 (7th Cir. 2006) (citing *Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 475 (7th Cir. 2004); *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The FCRA prohibits a consumer reporting agency from providing a consumer report containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years."[1] 15 U.S.C. § 1681c(a)(4). The seven year period begins to run 180 days after the account is placed in collection or charged off by the creditor so the effective result is a seven and one-half year period from the original delinquency.[2] 15 U.S.C. § 1681c(c)(1). Additionally, the FCRA allows the

---

[1] The seven year limitation does not apply to (1) credit transactions involving a principal amount of $150,000 or more, (2) underwriting of life insurance involving a face amount of $150,000 or more, or (3) the employment of any individual at an annual salary which equals or exceeds $75,000. 15 U.S.C. § 1681c(b).

[2] But the 180 day extension only applies "to items of information added to the file of a consumer on or after the date that is 455 days after September 30, 1996." 15 U.S.C. § 1681c(c)(2).

consumer to check the accuracy of the information pos-sessed by a consumer reporting agency by requiring that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). We have recently held that "file" means the information contained in the con-sumer report produced by the consumer reporting agency. *Gillespie v. Trans Union Corp.*, ___ F.3d ___, No. 06-2576, 2007 WL 777658, at *3 (7th Cir. Mar. 16, 2007). The consumer also has the right to dispute the complete-ness and accuracy of the consumer reporting agency's information through a dispute resolution procedure. 15 U.S.C. § 1681i.

This case requires us to determine whether Equifax's procedure of using the "Date of Last Activity" complies with § 1681g(a)(1)'s requirement to "clearly and accurately disclose . . . all information" in the plaintiffs' consumer file. Congress has not defined "clearly and accurately" as they are used in § 1681g(a)(1) of the FCRA. Additionally, neither the parties nor the court have been able to iden-tify a case that directly controls the disposition of this case. Therefore, we must apply the canons of statutory interpretation to resolve the question.

"When interpreting statutes, 'we give words their plain meaning unless doing so would frustrate the overall purpose of the statutory scheme, lead to absurd results, or contravene clearly expressed legislative intent.'" *United States v. Davis*, 471 F.3d 783, 787 (7th Cir. 2006) (quoting *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006)). "We must 'construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid constru-ing statutes contrary to the clear intent of the statutory scheme.'" *Cole v. U.S. Capital*, 389 F.3d 719, 725 (7th Cir.

2004) (quoting *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996)). "We frequently look to dictionaries to determine the plain meaning of words." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) (citing *Molzof v. United States*, 502 U.S. 301, 307 (1992); *Newsom v. Friedman*, 76 F.3d 813, 817 (7th Cir. 1996)).

Webster's Third New International Dictionary (3d ed. 1986), defines "clearly" as: "(1) in a clear manner (that which is and distinctly conceived as the truth); (2) of something asserted or observed: without doubt or question." "Accurately" is defined "in an accurate manner." A primary purposes of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i. We conclude that the consumer reporting agency must do more than simply make an accurate disclosure of the information in the consumer's credit file. The disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file. In writing § 1681g(a)(1), Congress requires disclosure that is both "clearly and accurately" made. An accurate disclosure of unclear information defeats the consumer's ability to review the credit file, eliminating a consumer protection procedure established by Congress under the FCRA.

In applying this legal standard, and drawing all justifiable inferences in the plaintiffs' favor as we must at this procedural stage, *Anderson*, 477 U.S. at 242, we conclude that Equifax's disclosure to the plaintiffs may be accurate but it is not necessarily clear. The recording of multiple dates in the "Date of Last Activity" can cause significant confusion and uncertainty for the consumer. The Date of

Last Activity field is used for different purposes within Equifax's file. For one credit account it discloses the positive credit history of a current payment while in a second credit account it discloses the negative event of delinquency. More troubling is the concern that Equifax's exclusive use of the Date of Last Activity could effectively allow Equifax the opportunity to keep delinquent accounts in the credit file past the seven and one-half year limitation of § 1681c(c)(1). The Date of Last Activity that previously listed the date of delinquency in the account will be replaced should the consumer make an intervening payment on the account. The date of the intervening payment would become the new Date of Last Activity used in the seven and one-half year calculation. However, the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file.

Equifax has not provided an explanation for why it posts both positive payment information and negative delinquency data within the Date of Last Activity field. Even more damning to Equifax is the fact that the field immediately next to the Date of Last Activity is a field labeled "Date Maj. Dlqu. Rptd." Equifax defines the Date Maj. Dlqu. Rptd. field as "the date the first major delinquency was reported." Although the Date Maj. Dlqu. Rptd. field appears to be available for use on Equifax's form, it remains blank on the disclosures provided to the plaintiffs pursuant to § 1681g(a)(1).

In conclusion, we must note the scope of our decision and the next steps to be taken in this case. The only issue before us was the district court's judgment in favor of Equifax from a motion for summary judgment which we are reversing today. Should the plaintiffs move for summary judgment, then of course the procedural posture

will change and all reasonable inference will be drawn in Equifax's favor. Alternatively, if the plaintiffs do not bring a motion for summary judgment then they will need to prove their case before a trier of fact. We pause to make these observations because we recognize that our decision is critical of Equifax's disclosures—we are troubled by these disclosures in light of the requirements of the FCRA—but we stress that we are not deciding today the issue of Equifax's liability. We are only deciding that the case must continue. The issue of Equifax's liability, whether decided through a plaintiffs' motion for summary judgment or at trial, is for the district court to decide in the first instance. Finally, we note that the district court did not consider the plaintiffs' motion for class certification because it granted Equifax's motion for summary judgment. The district court should return to its consideration of the class certification if the plaintiffs choose to pursue a class action.

### III.  CONCLUSION

The judgment of the district court is reversed and the case is remanded for additional proceedings consistent with this decision.

A true Copy:

      Teste:

 

          _____

          *Clerk of the United States Court of*
              *Appeals for the Seventh Circuit*