NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 10, 2009
Decided June 16, 2009

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 08-3531

| | |
|---|---|
| JOYCE A. GLOVER, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Fort Wayne Division. |
|     *v.* | |
| | No. 07 C 167 |
| U.S. HEALTHWORKS, | |
|     *Defendant-Appellee*. | William C. Lee, *Judge*. |

**O R D E R**

Joyce Glover, who was 66 years old at the time, claims she was cut from her job at a U.S. Healthworks clinic in Fort Wayne, Indiana, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.  The district court granted summary judgment for her employer, and Glover appeals.

Glover was hired at the age of 58 as a center manager at U.S. Healthworks's Fort Wayne facility in 1998.  The clinic contracts with businesses to provide their employees with health-care services, including physicals, treatment for job-related injuries, and

physical therapy.  Glover's duties included managing the clinic's finances and personnel as well as general oversight of operations.  Healthworks, which operates in several states, began struggling in 2001 in the wake of the financial downturn after 9/11.  To cut costs the company began assigning one manager to two clinics where possible, and for a short time in 2003 Glover managed both the Fort Wayne clinic and the clinic in Warsaw, Indiana.  The Fort Wayne clinic suffered another setback in 2005 when its biggest client closed up shop.

In addition to the loss of revenue in Fort Wayne, Healthworks anticipated a significant reduction in revenue in California, the company's largest revenue-producing state, when a new law took effect in 2006 that would change how claims for workers' compensation were paid.  Healthworks decided to compensate by cutting costs company-wide, and a decision was made to eliminate at least 43 jobs nationally.  Mark Foster, regional director of the Midwest region and Glover's supervisor, worked with Brian Arnds, the national vice-president of Human Resources, to decide which positions in the Midwest could be eliminated.  Foster and Arnds based their cuts on (1) the job description, (2) the need for that particular job within the company, (3) the performance of the employee holding the job, and (4) that employee's tenure.  The two men concluded that the clinic in Fort Wayne did not warrant a stand-alone manager, and they decided to combine the management of that clinic with a second clinic.  This time, however, Glover was not selected to run two clinics.  Instead, Kelli Becker, a younger employee who managed a clinic in Elkhart, Indiana, was tasked with the additional responsibility of managing the Fort Wayne clinic.  On June 29, 2006, Foster informed Glover that her position was being eliminated due to a reduction in force.  He assured her that the decision had nothing to do with her performance and offered her a severance package in exchange for a general release agreement.

Glover rejected the severance package and instead filed suit, claiming that Foster and Arnds used the RIF as an excuse to get rid of her because of her age.  Glover thought that her age was a factor in Foster's decision because the year before, when she turned 65, he told her that he did not want her to "up and retire and leave [him] without a center manager," and therefore her possible retirement was on his mind.  Additionally, when Foster offered her the severance package, he said, "I hope this gets you through to the end of the year."  Glover assumed he meant that she would have retired anyway and answered: "I have never given you a notice that I was retiring.  I cannot retire.  I will have to look for another job."

Glover was also suspicious because she was the only center manager out of 100 nationwide whose position was eliminated, she was the only employee terminated in the Midwest region, and she was the oldest nonphysician employee who was let go.  Further-

more, she was performing her job well, as evidenced by a recent e-mail from Foster's boss congratulating her on her outstanding financial performance for the year 2005 and stating that he believed she would "carry the momentum forward."

Healthworks denied engaging in age discrimination and at summary judgment explained its decision to eliminate the management position in Fort Wayne and retain Becker over Glover. According to the company, Foster and Arnds first concluded that the clinics in Elkhart and Fort Wayne should be combined under a single manager; the Fort Wayne clinic was losing money in 2006, while the Elkhart clinic was profitable. Becker, the Elkhart manager, had worked at Healthworks six years longer than Glover and had consistently outscored her on performance reviews. For example, on a form allowing a reviewer to select a rating of unsatisfactory, needs improvement, satisfactory, exceptional, or outstanding, Becker's overall performance in 2004 was described as exceptional and as exceptional/outstanding in 2003 and 2005. And in 2003 she was named one of the best managers in the Midwest. On the other hand, Glover's overall performance in 2003 and 2004 was described as needs improvement/satisfactory, and during both reviews she was told that she needed to improve her organizational skills and communicate better with staff and clients. Glover showed improvement in 2005, and for that year her overall rating rose to satisfactory/exceptional, but she still needed to improve her organizational skills. Additionally, Becker had previously received high marks when she temporarily managed the clinics in Elkhart and Muncie at the same time, but Glover had struggled when she was given the additional task of managing the Warsaw clinic. Becker had earned a bachelor's degree in exercise science and an associate degree as a physical therapy assistant, while Glover had only a high school diploma. Finally, Healthworks pointed out that, although Glover was the only center manager terminated in the RIF, the company also terminated two area managers, both of whom were over 40, and an area manager is similar to a center manager but oversees more than one clinic.

Glover claimed that Healthworks's reasons were pretextual and that she was in fact fired because of her age. First, she contended that the company purposely mischaracterized her performance record in order to paint her in a bad light. For example, she asserted that her performance managing the Fort Wayne and Warsaw clinics was not indicative of future performance because Healthworks assigned her to both clinics even though they knew that the Fort Wayne clinic was growing and changing and needed her there on a daily basis. Additionally, she said that Fort Wayne lost its biggest client because the company closed, not through any fault of hers, and the resulting operating loss also was not her fault because Foster did not allow her to budget for it. Additionally, she said her mediocre performance reviews should not be held against her because at those times she had to cover open positions at the clinic, positions that Foster did not let her fill. Finally,

she asserted that area managers are different from center managers because an area manager does more than just manage the clinics, leaving her as the only center manager to be fired.

On appeal Glover argues that at summary judgment she presented enough circumstantial evidence to create, under the direct method, a "convincing mosaic" depicting intentional discrimination. Glover also contends that her evidence was sufficient, under the indirect method, to make out a prima facie case and to refute as pretext the assertion by Healthworks that she was let go because of the RIF.

The ADEA prohibits employers from terminating workers over 40 based on age, but it does not protect older employees from being fired for legitimate reasons. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1062 (7th Cir. 2003). An employee suing under the ADEA can proceed using either the direct or indirect method of proof.

With the direct method, if the employee does not have what amounts to an admission of discrimination, she may use circumstantial evidence creating a "convincing mosaic" that points directly to a discriminatory reason for the decision. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008). Circumstantial evidence could include ambiguous statements by the decisionmaker about age, the decisionmaker's treatment of other employees over the age of 40, or other bits and pieces leading to an inference of discriminatory intent. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009); *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007).

In contrast, the indirect method of proof, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires the plaintiff to first establish a prima facie case of discrimination. *See Filar v. Bd. of Educ.*, 526 F.3d 1054, 1059-60 (7th Cir. 2008). Where, as here, the plaintiff was an over-40 employee who was discharged as part of a RIF, she can make out a prima facie case by presenting evidence that she was performing her job adequately, and yet her job was eliminated and her duties absorbed by another employee under age 40. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007). But even if the plaintiff satisfies this initial burden, she must still overcome the employer's reliance on the RIF as the basis for her termination by raising an inference that the RIF really was pretext for covering up age discrimination. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 556-57 (7th Cir. 2001); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574-75 (7th Cir. 2003). In the context of a RIF, however, "it is not pretextual to terminate an individual perceived to be a weak performer in an organization even if that individual's performance could also be characterized as satisfactory or adequate." *Merrillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006).

As a preliminary matter, Glover does not dispute that the RIF was economically necessary. Her theory, instead, appears to be that Foster and Arnds chose to eliminate the management job in Fort Wayne and then terminated her, rather than Becker, because of her age.

As for the direct method, Glover cites the following as circumstantial evidence that Foster and Arnds terminated her because of her age: (1) she was the oldest nonphysician employee terminated in the RIF, (2) she was the only employee terminated in the Midwest region, (3) she was the only center manager terminated out of 100 nationwide, (4) Foster had mentioned "retirement" to her a few months before the RIF, and, (5) in her view, she was just as qualified, if not more so, than Becker at running a clinic, but Foster set her up to fail by preventing her from freely managing the clinic. The fifth point, however, is simply Glover's opinion, not a fact, and the remaining four points do not add up to proof of discrimination.

Out of the 43 employees terminated in the RIF, 21 were under 40 and 22 were over 40 years of age. In light of the range of ages on the list, Glover needs to point to more than her place near the top of the range. *See Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1054 (7th Cir. 2006). Additionally, although Glover complains about being the only Midwest employee terminated, she did not present any evidence about the employees who were retained, who, for all we know, could be older than Glover. Being the only terminated center manager also does not help Glover without more information about the center managers that remained and how they and their clinics compared to Glover and her clinic. And narrowly focusing on just center managers in the RIF or distinguishing between physicians and nonphysicians obfuscates that a variety of positions, both professional and nonprofessional, were included in the RIF and that Glover's position does not stand out. Furthermore, the inquiry is not whether Glover (or the judges on this panel) believes that retaining her would have been a better choice. The question is whether Foster and Arnds honestly believed that keeping Becker was the best decision, whether or not that decision proved correct in the end. *See Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008). And, finally, the only reasonable inference arising from Foster's comment about retirement is that he wanted Glover to *stay*, not leave, and anyway, the comment was too remote in time to infer that it played a role in the termination decision. *See Hemsworth*, 476 F.3d at 491; *Markel v. Bd. of Regents*, 276 F.3d 906, 910 (7th Cir. 2002) (explaining that allegedly discriminatory comments made two months before plaintiff was fired were too remote in time to give rise to inference of discrimination).

Turning to the indirect method, Glover curiously emphasizes that her duties were absorbed by a person under 40, but that fact has never been in dispute. The only element of

the prima facie case questioned by the district court is whether Glover was performing up to expectations, and the court resolved that issue in Glover's favor. The real issue, then, is whether Glover produced enough evidence to raise a jury question about the veracity of Healthworks's explanation that she was let go only because of the RIF. *See Petts*, 534 F.3d at 726. Regardless of the wisdom of the decision, all that matters is whether Foster and Arnds honestly believed that Fort Wayne no longer should have its own manager and that Becker was better suited to take on managing a second clinic. *See id.*

Glover insists that the RIF was pretextual because, in her view, the only valid means of accomplishing a RIF in this situation would be to eliminate the position of center manager in every facility across the country. *See Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 472 (7th Cir. 2008) (noting that company's RIF of every person holding position of medical director, regardless of age, made it highly unlikely that age played factor in decision to terminate plaintiff). This contention is frivolous. Healthworks was not looking to revamp its business model; rather, it wanted to eliminate unnecessary positions. To that end, it determined that Fort Wayne did not need its own manager, an unsurprising decision given that only a short time before Glover had been assigned to manage two clinics simultaneously.

Additionally, Glover argues that her performance was so good that the only reason for her termination must have been age discrimination. But, "[i]n a reduction in force, someone has to go." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 573 (7th Cir. 1998). Glover was not terminated for deficiencies in her performance; she was terminated because Becker's performance was believed better by Foster and Arnds. Her own evaluation of their comparative worth does not create a genuine issue of material fact. *See Petts*, 534 F.3d at 726.

Accordingly, we **AFFIRM** the grant of summary judgment for Healthworks.