**TITAN TIRE CORP.**

v.

**UNITED STEEL.**

No. 10 C 50296.

United States District Court, N.D. Illinois.

Dec. 22, 2011.

Matthew Fitzgerald Logan, Hinshaw & Culbertson, Rockford, IL, for Titan Tire Corp.

John G. Adam, Legghio & Israel, P.C., Royal Oak, MI, Stephen Anthony Yokich, Cornfield & Feldman, Chicago, IL, for United Steel.

FREDERICK J. KAPALA, District Judge.

Plaintiff, Titan Tire Corporation of Freeport, filed an action against defendant labor unions United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and its Local 745, to vacate an arbitration award rendered pursuant to a collective bargaining agreement between plaintiff and defendants. Now before the court are defendants' motion for summary judgment asking the court to uphold the arbitration award, and plaintiff's motion for summary judgment asking the court to vacate the award. For the following reasons, plaintiff's motion is denied, and defendants' motion is granted.

## I. BACKGROUND

The following facts are taken from the Local Rule 56.1 statements of the parties.

To the extent the facts are in dispute, the court will note such dispute and will consider the facts in the light most favorable to the nonmoving party with respect to each motion for summary judgment.

Plaintiff operates a manufacturing facility in Freeport, Illinois, that produces agricultural and other off-road tires. Plaintiff and defendants were parties to a collective bargaining agreement (the "CBA") from January 2006 to November 19, 2010, as extended to December 2010. The CBA provides that plaintiff will pay the salaries of defendants' President and Benefits Representative (together, the "union representatives"), which are elected, full-time positions. Since purchasing the Freeport plant in 2006, plaintiff has made efforts to discontinue direct payment of the salaries to the union representatives. In October 2008, plaintiff ceased paying wages directly to the union representatives, stating that it believed such payment would be in violation of § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(a). After plaintiff discontinued direct payroll payments to the union representatives, it issued checks to defendants for an amount equivalent to the pay formerly received by the union representatives. Defendants submitted a grievance to an arbitrator challenging this practice, who sustained the grievance, finding that the direct payment of wages by plaintiff to the union representatives was not illegal.

The CBA provides that plaintiff will pay an employee who is a designated union representative at his current hourly rate for time lost from his regular shift as a result of attending scheduled grievance meetings with plaintiff, up to a certain weekly maximum number of hours. The parties also entered into an agreement entitled "Understandings Outside of the Agreement" that provided, in part, that the union representatives would be paid by the company for certain activities not charged against the Union Business account described in the CBA. Finally, the parties entered into a Benefits Agreement that provides for compensation for the Benefits Representative, stating that the Benefits Representative will be paid his current hourly rate for forty-eight hours per week plus 2% of previous year's earnings as vacation pay, and will be considered on a leave of absence during the time he serves as Benefits Representative.

The arbitrator found that the union representatives spend most of their time handling affairs of defendants that are connected with affairs of the company. The President is head of the grievance and negotiating committee. The President also deals with a variety of bargaining unit problems such as seniority, job bidding, and overtime distribution. The Benefits Representative's job is to meet with employees to help them secure their benefits. The Benefits Representative works with management to control costs and simplify the administration of benefits, and in performing these duties, he takes assignments from management. He is involved in health, accident and sickness, dental, supplemental employment benefits, life insurance, pensions, and workers' compensation issues. Both the President and the Benefits Representative maintain an office in both plaintiff's plant and the Union Hall in Freeport. The President handles problems during regular office hours at the plant, but is also available at the Union office, his home, or by cell phone. The Benefits Representative is similarly available to meet with plaintiff's employees either at plaintiff's plant or the Union office. The union representatives do not need to seek approval from plaintiff for vacation time, but must inform plaintiff of planned vacations so that someone is designated to fill in for their position in their absence.

## II. DISCUSSION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 489–90 (2007). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Hemsworth,* 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. *Id.*

In their motion for summary judgment, defendants ask the court to enforce the arbitration award finding that plaintiff breached the CBA, whereas in its motion, plaintiff asks the court to overturn the award on the basis that it violates § 302 of the LMRA.

■ "[I]n labor arbitration, matters of contract interpretation are typically for the arbitrator, not for a reviewing court." *El Dorado Technical Servs., Inc. v. Union Gen. De Trabajadores,* 961 F.2d 317, 319 (1st Cir.1992). Courts have limited authority to review an arbitrator's award entered pursuant to a collective bargaining agreement. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. *Id.* As long as the arbitrator's award "draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice," the award is legitimate. *Id.* at 36, 108 S.Ct. 364 (quotation marks omitted). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ However, a court may refuse to enforce an arbitrator's award under a collective bargaining agreement because it is contrary to public policy, as a specific application of the general doctrine that a court may refuse to enforce contracts that violate law or public policy. *Misco,* 484 U.S. at 42, 108 S.Ct. 364. Such refusal, however, "is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 43, 108 S.Ct. 364 (quotation marks omitted). Compliance with a federal statute furthers a public policy. *Id.; W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 770–72, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).

■ The Seventh Circuit has held that where the question before the court is whether an arbitration award violates public policy, the court engages in a *de novo* review as to that issue. *Chrysler Motors Corp. v. Int'l Union, Allied Industrial Workers, etc.,* 959 F.2d 685, 687 (7th Cir. 1992); *see also Chi. Bears Football Club, Inc. v. Haynes,* No. 11 C 2668, 816 F.Supp.2d 534, 537, 2011 WL 4062511, at *2 (N.D.Ill. Sept. 13, 2011). However, while the court may consider *de novo* plaintiff's argument that public policy prohibits enforcement of the arbitration award, the court is bound to accept the arbitrator's interpretation of the CBA, as well as his legal and factual conclusions. *ANR Advance Transp. Co. v. Int'l Broth. of Teamsters, Local 710,* 153 F.3d 774, 778 (7th Cir.1998); *see also Chi. Bears Foot-*

*ball Club, Inc.*, 816 F.Supp.2d at 537, 2011 WL 4062511, at *2.

Here, defendants argue that the payment of wages directly to the union representatives required by the CBA would not be in violation of § 302 of the LMRA. "Section 302 generally forbids employer payments to representatives of employees (unions)." *Perry v. Sheet Metal Workers' Local No. 73 Pension Fund*, 585 F.3d 358, 364 n. 3 (7th Cir.2009). The statute provides certain exceptions, however, including one for money paid "by an employer ... to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer." 29 U.S.C. § 186(c)(1). Defendants contend that the payments ordered by the arbitration award fit within this exception because the payments are "by reason of" the President's or the Benefits Representative's service as an employee or former employee of plaintiff.

The LMRA amended the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, which defines the term "employee" as follows:

> The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless [this Act] explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.

29 U.S.C. § 152(3). Recognizing that the statute defines the term "employee" very broadly, the United States Supreme Court in *NLRB v. Town & Country Electric, Inc.* indicated that courts often look to the common law definition of "employee" in interpreting the NLRA. 516 U.S. 85, 92–93, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995). The United States Supreme Court has found the common law of agency to hold that

> in determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.... Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117

L.Ed.2d 581 (1992) (quotation marks omitted).

Defendants first urge the court to find that the union representatives are current employees of plaintiff, citing *International Association of Machinists & Aerospace Workers, Local Lodge 964 v. BF Goodrich Aerospace Aerostructures Group*, 387 F.3d 1046 (9th Cir.2004). In *BF Goodrich*, the Ninth Circuit found that a Chief Shop Steward served as an employee of defendant company Goodrich where (1) he had been employed by the company for over 20 years prior to his service as a union representative; (2) his work week was controlled by the company; (3) he reported to the company's personnel department for approval of any overtime, sick leave and vacation days; (4) he did not have the power to hire, and did not pay, any assistants; (5) he did not receive his work assignments from the union or make frequent reports to it; and, most importantly, (6) his office was located not in a union hall, but on the floor of the shop "under the direct and immediate supervision of the corporate employer." *BF Goodrich*, 387 F.3d at 1059. Defendants contend that the union representatives here performed all of the duties of the Chief Shop Steward in *BF Goodrich* and more, and so should qualify as current employees of plaintiff.

For its part, plaintiff first urges the court to follow the reasoning of the Ninth Circuit in *BF Goodrich* to find that the most important factor in determining whether a union representative is a current employee of the company is the location of the representative's office, and so the union representatives are not employees because they did not maintain full-time offices at plaintiff's plant under the direct supervision of plaintiff's management.

Here, the court applies the fact-based agency analysis set forth by the United States Supreme Court in *Darden* to determine whether the union representatives are current employees of plaintiff for purposes of the LMRA. The relevant facts for the court's inquiry are summarized here. Defendants' Local Rule 56.1 statement indicates that the Benefits Representative "took assignments from management." Prior to October 2008, the union representatives were paid through plaintiff's normal payroll process and had deductions that were excluded from payroll taxes like other employees. Plaintiff's Local Rule 56.1 statement indicates that while the union representatives must notify plaintiff of any vacation or sick time so that a replacement may be found for their post, they are not required to seek approval from plaintiff for time off. Finally, the union representatives maintain offices in both the Union Hall and plaintiff's plant, with scheduled office hours at plaintiff's plant. However, there is no indication in the Local Rule 56.1 statements of the parties as to (1) how long former Presidents Kevin Kirk and Steve Vanderheyden or Benefits Representative Anthony Balsamo were employed by plaintiff prior to serving as a union representative; (2) whether plaintiff has any control over the structure of the union representatives' work weeks; or (3) whether the union representatives have any role in hiring and paying assistants.

■ Unlike the Court in *BF Goodrich*, this court is not persuaded that in this case, the factor most important to the court's analysis is the location of the union representatives' offices. The Supreme Court in *Darden* directed the courts that no one factor of the inquiry is decisive, but that "all of the incidents of the relationship must be assessed and weighed." *Darden*, 503 U.S. at 324, 112 S.Ct. 1344. Here, as noted above, the court does not have evidence of all of the incidents of the relation-

ship between plaintiff and the union representatives. Thus, given this limited factual record, the court is therefore unable to make a determination as to whether the union representatives were current employees of plaintiff. Consequently, the court has no basis for vacating the arbitration award on this point. *Farmers Nat'l Bank of Geneseo v. Van Kampen Merrit, Inc.*, No. 91 C 5653, 1992 WL 80516, at *1 (N.D.Ill. Apr. 13, 1992) (placing the burden on the party seeking the vacatur to prove that the arbitration award was improper). Plaintiff's motion for summary judgment is therefore denied insofar as it seeks to vacate the arbitration award on a theory that payments to the union representatives violate § 302 because the union representatives are not current employees of plaintiff.

Notwithstanding the foregoing, this does not end the court's analysis, because even if the union representatives were not current employees of plaintiff, the parties do not dispute that the union representatives were, at least, former employees of plaintiff.[1] Indeed, in the arbitration award, the arbitrator specifically notes that plaintiff was making payments to the union representatives "by reason of their former employment," and this court defers to the arbitrator on this finding of fact. In *Toth v. USX Corp.*, 883 F.2d 1297 (7th Cir.1989), the Seventh Circuit set forth the appropriate analysis regarding the legality of payments to union representatives who are former employees of the company pursuant to § 302.[2]

In *Toth*, the Seventh Circuit found that it was consistent with § 302(a)'s "goal of preventing bribery" to construe the phrase "as compensation for, or by reason of, his service as an employee" as covering collectively-bargained-for payments to former employees. *Id.* at 1304. Specifically, the Court found that

[o]ne obvious instance in which continuing payments constitute recompense for past services is when those continuing payments were bargained for and formed part of a collective bargaining agreement.... [A]ll of the terms of employment for which unions bargain are properly deemed part of the compensation for which employees work.

*Id.* at 1304. The Seventh Circuit recognized that employees may "accept lower wages now in return for future benefits," and that those future benefits "would be 'in compensation for' or 'by reason of' past employment." *Id.* In so doing, the *Toth* Court noted that the U.S. District Court for the District of Columbia had found that "benefits granted employees who were on union leaves (for up to eighteen years) were acceptable under the section 302(c)(1) exception." *Id.* (citing *Commc'ns Workers of Am. v. Bell Atl. Network Servs., Inc.*, 670 F.Supp. 416, 419 (D.D.C.1987)). In *Toth*, however, the Seventh Circuit did acknowledge an exception to the general

---

**1.** The evidence before the court, indicates that the union representatives were employed by plaintiff prior to serving in their roles as union representatives. The arbitration award notes, for example, that both prior to and after serving as President, Vanderheyden was a machinist in the employment of plaintiff, and that plaintiff was making payments to the union representatives "by reason of their former employment."

**2.** While the arbitrator in this case did not engage in an analysis of the payments in question as made to former employees pursuant to *Toth*, it is nevertheless appropriate for the court to base its decision on this reasoning because, as noted above, the standard of review on the narrow issue of whether the arbitration award violates public policy is *de novo*. *Chrysler Motors Corp.*, 959 F.2d at 687; *see also Chi. Bears Football Club, Inc.*, 816 F.Supp.2d at 537, 2011 WL 4062511, at *2.

rule that collectively-bargained-for payments do not violate § 302, stating that

> [a]t some point, it is conceivable that a bargain struck by the union and the employer might yet violate section 302— if, for example, the terms of the compensation for former employment were clearly so incommensurate with that former employment as not to qualify as payments 'in compensation for or by reason of' that employment, or if the terms vested so much discretion in the employer that the potential for undue influence created a clear 302(a) violation.

*Id.* at 1305. The Court cited a Second Circuit case stating that the court would not "suggest that [section 302(c)(1) ] would allow an employer simply to put a union official on its payroll while assigning him no work." *Id.* (quotation marks omitted). In *Toth*, the Seventh Circuit noted that "fulltime pay for no service cannot reasonably be said to be compensation 'by reason of' service as employee." *Id.*

Here, plaintiff first attempts to draw a distinction between the payment of wages versus fringe benefits. The court acknowledges that other courts have concluded that the descriptors "as compensation for" and "by reason of" signify two different kinds of payments: the former refers to ordinary wages and salaries, while the latter describes benefits such as medical leave and a pension. *BF Goodrich*, 387 F.3d at 1056. However, even if the court is persuaded that § 302 is meant to cover these two different types of payments, plaintiff has not identified, nor is the court aware of, any precedent indicating that the court's treatment of a payment of wages should be categorically different than that of fringe benefits under § 302. Rather, the plain language of § 302 indicates the contrary: the exception at issue here applies to "any money or other thing of value," whether paid "as compensation for,

or by reason of" the former employee's service. 29 U.S.C. § 186(c)(1).

Next, plaintiff argues that this case falls within the exception to § 302 recognized by the Seventh Circuit in *Toth*. Defendants contend that under *Toth*, payments to the union representatives are lawful under § 302 because they are made pursuant to the CBA. The court understands the holding of *Toth* to provide that, absent an indication of a "dangerously imbalanced bargain" or the "potential for undue influence" prohibited by § 302(a), the key factor in determining the legality of payments to a former employee pursuant to § 302(c)(1) is whether the compensation is paid pursuant to a collective bargaining agreement. *Toth*, 883 F.2d at 1305. Here, there is no evidence before the court to suggest that plaintiff's payment of compensation to the union representatives constitutes a dangerously imbalanced bargain or creates the potential for undue influence. Indeed, the court must give deference to the factual findings of the arbitrator, who found that the compensation agreements were the result of negotiations between plaintiff and union officials, and were also voted on and ratified by union members.

Further, the arbitrator found that the union representatives spent most of their time handling defendants' affairs that were "connected with the affairs of" plaintiff. The arbitration award indicates that the union representatives "spent their sole time working on concerns of Titan employees," indicating that this is not a situation in which the compensation for former employment is clearly incommensurate with that former employment, or in which the company has placed union representatives on its payroll even though they perform no work for the company.

Following the Seventh Circuit's ruling in *Toth*, the court finds that payments made

to the benefits representatives as former employees of plaintiff are not in violation of the LMRA, as they fall within the exception provided in § 302(c) for payments made to former employees because those payments were enshrined in the CBA, are not the product of a dangerously imbalanced bargain, and do not raise a potential for undue influence, as prohibited by § 302(a).

## III.  CONCLUSION

Direct payments to the union representatives are lawful under the LMRA pursuant to § 302(c), and so the court will uphold the arbitration award.  Plaintiff's motion for summary judgment is therefore denied.  Defendants' motion for summary judgment is granted.